THE PEOPLE *ex rel.* Henry Stuckart, Assessor,

*v.*

PHILIP KNOPF, County Clerk.

*Opinion filed January 12, 1900—Rehearing denied February 9, 1900.*

1. PLEADING—*averments of answer not denied are admitted.* Averments of the answer to a petition for *mandamus* not denied by replication are admitted.

2. OFFICERS—*a de jure office is essential to the existence of a de facto officer.* Though an act providing for filling a legally existing office may be void, yet one occupying such office under color of title will be a *de facto* officer; but if the act which creates the office itself is void there can be no *de facto* officer with respect thereto, as there is in that case no office to be filled.

3. STATUTES—*when a statute is not subject to constitutional provision concerning amendatory acts.* If a statute can properly be held to be a complete act of the legislature on the subject with which it deals, it will be deemed good and not subject to the operation of section 13 of article 4 of the constitution, providing that no act shall be amended by reference to its title only, notwithstanding it may repeal by implication, or modify, the provisions of prior laws.

4. SAME—*how character of act must be determined.* The character of an act, with reference to its being amendatory or complete, must be determined, not by the title alone nor what the act purports to be, but by an examination and comparison of its provisions with prior laws which are left in force.

5. CONSTITUTIONAL LAW—*Revenue act of 1898 is substantially a complete law.* The Revenue act of 1898 provides for a new system of assessing property upon a new basis, with new modes of procedure and methods of review, and, being substantially complete upon the subject dealt with, is not in violation of the constitutional provision forbidding the passage of amendatory acts without inserting the sections amended at length in the new act.

6. SAME—*classification for purpose of assessing property must not be arbitrary.* A classification of municipalities for the purpose of assessing property cannot be adopted arbitrarily upon a ground which has no foundation in difference of situation or circumstances of the municipalities placed in different classes, but there must be some reasonable relation between the situation of the municipalities classified and the objects to be attained.

7. SAME—*part of section 49 of Revenue act of 1898 is unconstitutional.* The provision of section 49 of Revenue act of 1898, (Laws of 1898, p. 52,) which attempts to limit the power of every municipality

in counties of 125,000 inhabitants or over to incur indebtedness in excess of two and one-half per cent of the assessed valuation, and to limit the rate of taxation in every municipality or taxing district in such counties to five per cent, is unconstitutional and void, being special legislation based upon an arbitrary classification, which deprives such municipalities of rights enjoyed by other municipalities in the same situation in other counties.

8. TAXES—*same rule for extending taxes applies to all counties of the State.*   The invalidity of that portion of section 49 of the Revenue act of 1898 which attempts to restrict the power of incurring indebtedness and to limit the rate of taxation in certain municipalities does not affect the other portion of the section providing the rule for extending taxes, which remains applicable to all counties.

9. SAME—*the office of board of county assessors is legally created.*   The Revenue act of 1898, as a whole, is not rendered invalid by striking out the provision herein held void, and the office of the board of county assessors is, therefore, lawfully created.

APPEAL from the Circuit Court of Cook county; the Hon. E. F. DUNNE, Judge, presiding.

SHOPE, MATHIS & BARRETT, and DARROW, THOMAS & THOMPSON, for appellant.

ROBERT S. ILES, FRANK L. SHEPARD, and JOHN C. RICHBERG, for appellee.

Mr. CHIEF JUSTICE CARTWRIGHT delivered the opinion of the court:

The People of the State of Illinois, on the relation of Henry Stuckart, township assessor of the town of South Chicago, in Cook county, filed a petition in the circuit court of said county, alleging that the relator was elected assessor of said town at the annual town election on the first Tuesday of April, 1899, and on May 1, 1899, demanded of Philip Knopf, county clerk of said county, the books and blanks for the assessment of property in said town for the year 1899 under the provisions of sections 69 and 70 of the Revenue law in force prior to 1898, and praying for a writ of *mandamus* to compel said county clerk to

deliver the books and blanks aforesaid to the relator.
The defendant answered with a denial of the election and
qualification of the relator as assessor of said town, and
averred that on April 1, 1899, he delivered the necessary
books and blanks for the assessment of property in Cook
county to certain persons alleged to have been elected
and qualified as the board of assessors of said county
under and pursuant to an act of the legislature entitled
"An act for the assessment of property and providing
the means therefor, and to repeal a certain act therein
named," in force July 1, 1898. A replication was filed
alleging that the relator was the regularly elected and
qualified assessor of the town of South Chicago. The de-
fendant, admitting the replication to be true, then moved
the court to dismiss the petition upon the face of the
pleadings. The court sustained the motion and dismissed
the petition at the cost of the relator. The case involved
the question of the validity of the above mentioned act of
1898, creating a board of assessors and authorizing them
to assess property and taking the power from the town-
ship assessor, and an appeal is therefore taken directly
to this court for the determination of that question.

The averments of the answer that the persons named
therein had been elected and qualified as the board of
assessors of Cook county, and that defendant had deliv-
ered the books to them, were not denied by replication
and were therefore admitted. On the basis of these facts
it is argued, that, having delivered the books to officers
*de facto*, the act of the defendant could not be questioned;
that the assessment made by such board of assessors for
the year 1899 would be conclusive and binding upon all
persons and have the same credit and effect as if the
board were officers *de jure*, and that there can be no relief
for the relator whether the act of 1898 is valid or void.
This argument is unsound, in failing to distinguish be-
tween cases where there is an existing office to be filled
and one where there is not. An unconstitutional act can

not create an office. If the law under which the board
of assessors of Cook county were elected and qualified
is unconstitutional and void, then there was no such of-
fice known to the law as a board of assessors, and there
could be no officer *de facto* of that kind. Prior to the act
of 1898 there was the town office of township assessor,
and this office is retained in express terms by that act.
That officer is left to discharge every duty before im-
posed upon him, except the assessment of property in
certain specified localities. It is admitted that the re-
lator filled that office in the town of South Chicago.
This board of assessors were not filling or claiming to fill
that office, but the creation of the board was the creation
of a new office. Where an office exists by law, an act
providing for filling it may be void and yet one who is
in occupancy of the office, holding it under color of title
and discharging its duties, is an officer *de facto*. The acts
of such an officer will be binding upon the public and
third persons, but if the office itself never existed there
can be no officer in fact. The authorities in support of
this rule are very numerous and need not be referred to
at length. The rule is stated in Dillon on Municipal Cor-
porations, (sec. 76,) as follows: "In this country the doc-
trine is everywhere declared that the acts of *de facto*
officers, as distinguished from acts of mere usurpers, are
valid, and the principle extends not only to municipal
officers generally, but also to those composing the coun-
cil, or legislative or governing body of municipal cor-
porations. But in order that there may be, within the
meaning of the above rule, a *de facto* officer there must
be a *de jure* office; and the notion that there can be a
*de facto* office has been characterized as a political sole-
cism, without foundation in reason and without support in
law, and therefore a person cannot claim to be a *de facto*
officer of a municipal corporation when the corporation
or people have, in law, no power, in any event, to elect
or appoint such an officer." The case of *Leach* v. *People*,

122 Ill. 420; which seems to be relied upon by counsel, does not hold the contrary. In that case the real cause of complaint was said to be "that the office legally existing was illegally filled." The legislature had attempted to change the composition of the board of supervisors of Wayne county, but as the court said, "there was all the while the legally established office or official body of the board of supervisors of Wayne county." If no such office as the board of assessors of Cook county was lawfully created, the members of the board were not officers *de jure* or *de facto*, and any action of such board would be illegal and void. The question whether they were proceeding to make, or whether they have made, an assessment of property in Cook county would be immaterial, and neither confer any right nor impose any duty. If the office was not created, the delivery to that board would be no justification for the refusal of the county clerk to deliver books and blanks to the relator. No matter what may have been done in the way of an assessment by a board of assessors, it is our duty to consider the questions presented as to the constitutionality of the act creating the board.

In the case of *People ex rel. Green* v. *Commissioners of Cook County*, 176 Ill. 576, we considered various objections made to the Assessment act of 1898, which is now assailed, and held that it was not subject to any of those objections. The questions then determined are not open to further consideration, and counsel in this case have refrained from discussing any of them, but present to the court new and different objections to the act. The first of these objections is, that the act is purely amendatory of existing laws for the assessment of property, and that it was passed by the legislature in disregard of section 13 of article 4 of the constitution, which provides that "no law shall be revived or amended by reference to its title only, but the law revived, or the section amended, shall be inserted at length in the new act." The title of

the act of 1898, which has been already given, does not indicate that the act is amendatory of any existing law, nor does the act itself profess, in terms, to amend another law by reference to its title or otherwise. So far as the title goes, the act purports to be a complete law in itself and to make provision for the assessment of property throughout the State and to provide the means therefor. If it can be held to be such a law, constituting a complete and entire act of legislation on the subject which it purports to deal with, it will be deemed good and not subject to the constitutional prohibition, notwithstanding it may repeal by implication, or modify, the provisions of prior existing laws. On the other hand, if the act is merely an attempt to amend the old law for the assessment of property by intermingling new and different provisions with the old ones or by adding new provisions, so as to create out of the existing laws and this act together an act for the assessment of property, then the act is clearly amendatory of the old law, and the requirement of the constitution is that the law so amended must be inserted at length in the new act. The character of the act in this respect must be determined, not by the title alone nor the question whether the act professes to be an amendment of existing laws, but by an examination and comparison of its provisions with prior laws which are left in force. An examination of the act, in connection with the very forcible argument of counsel against its validity, raises most serious questions whether it is not merely amendatory of prior existing laws for the assessment of property. These questions are, however, to be looked at in the light of the rule that an act within the legislative power is to be sustained as constitutional if it can reasonably be done, and the reason for giving the rule its utmost force in this case is especially cogent on account of conditions which are plainly apparent to every one. Under all the circumstances the act should be sustained, if possible, as independent legis-

lation, and not as amendatory in character. The mere fact that portions of the old law are left in force, so that the statutes present the aspect of what has been called patch-work legislation, as they undeniably do, should not render the act void, if it can be said that the act is reasonably complete and sufficient in itself upon distinct branches of the general subject.

In the case of *People* v. *Wright*, 70 Ill. 388, the ground of the constitutional provision as stated by Cooley, J., in *People* v. *Mahoney*, 13 Mich. 484, was approved and quoted, as follows (p. 397): "The mischief designed to be remedied was the enactment of amendatory statutes in terms so blind that legislators themselves were sometimes deceived in regard to their effect, and the public, from the difficulty in making the necessary examination and comparison, failed to become apprised of the changes made in the laws. An amendatory act which purported only to insert certain words, or to substitute one phrase for another in an act or section which was only referred to but not re-published, was well calculated to mislead the careless as to its effect, and was, perhaps, sometimes drawn in that form for that express purpose. Endless confusion was thus introduced into the law, and the constitution wisely prohibited such legislation. But an act complete in itself is not within the mischief designed to be remedied by this provision, and cannot be held to be prohibited by it without violating its plain intent." This court in that case had under consideration the act to establish a board of police in and for the city of Chicago, and concerning that act said (p. 396): "No particular section of any act purports to be amended by this act. All that can be said of it in this respect is, that by implication it amends the municipal charters of cities. It cannot be held that this clause of the constitution embraces every enactment which in any degree, however remotely it may be, affects the prior law on a given subject, for to so hold would be to bring about an evil far

greater than the one sought to be obviated by this clause."
In *Timm* v. *Harrison*, 109 Ill. 593, it was again said (p. 598):
"The mischief intended to be remedied by the constitu-
tion was that of the amendment of statutes by reference
to their titles only.   Under the practice which had pre-
vailed, to amend a previous act merely by reference to
its title, and in the insertion or striking out of certain
words or the making of some substitution therein, the
amendatory act, of itself, would be unintelligible, and it
would require examination and comparison with the prior
act to understand what the real purport of the amenda-
tory act was,—hence the constitutional inhibition that
'no law shall be revived or amended by reference to its
title only;' and in remedy of the evil the further provi-
sion is, 'but the law revived or the section amended shall
be inserted at length in the new act.'"   A like conclusion
was reached and similar language used in *People* v. *Loeffler*,
175 Ill. 585.

Section 55 of the act of 1898 expressly provides that
all the provisions of the general Revenue law in force
prior to the taking effect of the later act shall remain
in force and be applicable to the assessment of prop-
erty, except in so far as is otherwise expressly provided.
Several other sections of the act refer to existing laws
which have relation to assessing property as remaining
in force, notably sections 7, 8, 9, 10 and 18.   It is appar-
ent that it would be impossible to determine what the
law is relating to what property is subject to assessment
and taxation and what is exempted, and other branches
of the general subject as to which the old law remains
in force, without reference to such old law.   The act of
1898, however, provides for an entire new system of mak-
ing the assessment, and the basis of it, with new modes
of procedure and a new system of review, and as to that
subject it is substantially complete in itself, constitut-
ing an entire plan for the making of the assessment.
"Two or more laws relating to the same subject or dif-

ferent parts of the same subject matter are not neces-
sarily amendatory of each other, within the meaning of
this clause of the constitution, although they may be
construed together as *in pari materia.*" (*School Directors
v. School Directors*, 135 Ill. 464.)   We are disposed to hold
that the provisions of this act are substantially complete
upon the branch of the subject which it deals with, and
that the constitution was not violated in its passage.

The next ground upon which the validity of the act
is challenged is, that it is a local and special law upon
a subject on which special legislation is prohibited by
the constitution.   The objection is, that while the act
assumes to classify the counties of the State by popula-
tion as a basis for legislation concerning the assessment
of property, it also undertakes to classify various cities,
townships, school districts and municipal corporations
within such counties, not upon any legitimate basis of
classification, but on grounds wholly inconsistent with
the principles upon which classification by population is
founded and justified, and that the whole act is thereby
rendered void.   The argument that the act is special in
its division of counties into classes for the purposes of
assessment was considered in *People v. Commissioners of
Cook County, supra,* and it was held not subject to the gen-
eral objection then made.   So far as the classification
into counties for the creation of boards of assessors and
methods of procedure as to each class is concerned, the
act was found to be uniform throughout the State; but
the objection that the act arbitrarily restricts the powers
of municipalities situated in certain counties in respect
to incurring indebtedness and levying taxes was not made
or considered.   It is not doubted that a classification
of the counties of the State by population as a basis
for legislation is valid.   Such a classification is in ac-
cordance with material distinctions between populous
districts and sparsely settled communities.   Additional
powers may be required in large cities, and the perform-

ance of additional duties, such as the maintenance of an adequate police force, protection against fire, water supply, and other things, might call for legislation different from that required in less populous centers. The increased responsibilities and duties of a city which is required to afford protection to and supply the needs of a great population may require a greater revenue and a higher rate of taxation than would be needed in a small town or village. But all legislation on that subject must be by uniform and general laws. In the case of *People* v. *Cooper*, 83 Ill. 585, the City Tax act, which was under consideration, was held to be void because the prohibition against special and local laws extends to provisions for the levy and collection of taxes by municipalities. It was said that if the result of an act would be to establish dissimilarity in the powers and modes of different cities in the levy and assessment of taxes it was forbidden by the constitution, and that all legislation affecting the powers of cities, towns or villages must be by general laws.

The particular portion of the act now questioned consists in the provisions contained in section 49, as follows: "In counties containing one hundred and twenty-five thousand (125,000) or more inhabitants the amount to which any county, city, township, school district or other municipal corporation shall be allowed to become indebted in any manner or for any purpose, shall not hereafter exceed two and one-half per cent on the assessed value of the taxable property therein, to be ascertained by the last assessment for State and county taxes previous to the incurring of such indebtedness. In any municipality or taxing district in any county or counties containing a population of 125,000 or more inhabitants in which the aggregate of the levies or taxes certified to the county clerk exceeds five per cent, a reduction shall be made by the county clerk in the taxes so certified, so as to reduce the aggregate of such taxes to five per cent in the manner following, viz.: The rate of county taxes throughout the

county shall be fixed by reducing the aggregate rate of taxation in the municipality or taxing district within the county in which such aggregate rate is the highest, to five per cent by a *pro rata* reduction of all the levies certified therein, exclusive of the State taxes. The rate of each of the other kinds of tax levies shall be fixed in the same manner, taking the highest rate of taxation in any part of the municipality or other taxing district, or part thereof, as the basis of ascertaining the rate of taxation to be levied by such municipality or taxing district, and making the rate of taxation within the limits thereof uniform, and reducing the aggregate rate of taxation in each district in which it exceeds five per cent to five per cent. In ascertaining the aggregate rate of taxation, and reducing the same under the foregoing provision, taxes certified or levied for school building purposes shall not be included or taken into account in any manner, or for any purpose. The limitations herein contained shall apply only to assessments of property made under the provisions of this act."

By these provisions there is an attempt to limit the power of every municipality in counties of a certain population to incur indebtedness to the amount of two and one-half per cent of the assessed valuation, and to limit the aggregate rate of taxation in every municipality or taxing district located in such a county to five per cent of such valuation. In the recent case of *People* v. *Martin*, 178 Ill. 611, we held a classification void which was based merely upon the fact that certain territory had previously constituted a part of an incorporated town. This was upon the ground that the mere fact of previous location formed no basis for classification, and the rule is that a classification cannot be adopted arbitrarily upon a ground which has no foundation in difference of situation or circumstances of the municipalities placed in the different classes. There must be some reasonable relation between the situation of municipalities classified and the purposes

and objects to be attained.    There must be something, in the nature of things, which in some reasonable degree accounts for the division into classes.    By this act restrictions are put upon cities, townships, school districts and other municipal corporations simply because they are within Cook county, which is the only county in the State with a population of more than 125,000.    There can be no reason, in the nature of things, why a city, village, school district or other public or *quasi* public corporation in that county should be deprived of powers that a similar corporation situated in some other county is permitted to exercise.    It is an arbitrary and unnatural classification of municipalities not different in population, needs or requirements and exercising the same general powers in other respects.    For instance, the municipality of Evanston, with the same duties and responsibilities, exercising the same functions and with the same needs as cities of similar population throughout the State, is denied the powers which are allowed to others.    The cities of Quincy, Springfield, Joliet, Aurora, Rockford, and others of that class, of about the same population as Evanston, are free from the restrictions of this act as to indebtedness and the levy of taxes.    So, also, there are villages in Cook county of lesser population corresponding in size with other municipal corporations all over the State and which have no greater responsibilities.    The fact that some such villages are in Cook county affords no ground for a restriction upon them, while others of the same class outside of the county may incur an indebtedness of five per cent of the equalized assessment and may levy taxes to the full limit prescribed by general laws. There is no escaping the conclusion that the provisions of section 49 above quoted are void.

It is also contended that these provisions are void because they relate to a matter not expressed or referred to in the title of the act, and for other reasons; but it is unnecessary to consider such further objections.

The remaining question is, whether the invalidity of said provisions necessitates the destruction of the entire act. The fact that a part of the act is unconstitutional does not require that the remainder shall be held void, unless all the provisions are so connected as to depend upon each other. "The constitutional and unconstitutional provisions may even be contained in the same section and yet be perfectly distinct and separable, so that the first may stand though the last fall. * * * If, when the unconstitutional portion is stricken out, that which remains is complete in itself and capable of being executed wholly independent of that which was rejected, it must be sustained." (Cooley's Const. Lim. 178.) It is urged that the whole law must fail under this rule, because, by striking out the restriction, there is no provision for extending the taxes in counties of 125,000 or more inhabitants. We do not think that is so. The first clause of section 49 is general in its terms and covers all counties in the State, and, with the objectionable provision stricken out, the same rule for extending the taxes applies to all counties in the State. If it can be said that the void provisions are germane to the general subject embraced in the title, they are certainly foreign to every other provision of the act and wholly independent of them. We hold, therefore, that the act, as a whole, is not rendered invalid by striking out the void provisions, and that the office of board of county assessors was lawfully created. The pleadings admit that the persons named in the answer were duly elected and qualified as such board of county assessors, and that the county clerk delivered the books to such board.

The judgment of the circuit court is therefore affirmed.

*Judgment affirmed.*