THE PEOPLE ex rel. Frank E. Davis, Appellee, vs. FRED
D. NELLIS, Appellant.

*Opinion filed February 25, 1911.*

1. CONSTITUTIONAL LAW—*purpose of provision of constitution
concerning titles of acts.* The constitutional requirement that no
act shall embrace more than one subject and that shall be ex-
pressed in its title was not intended to hamper the legislature or
embarrass honest legislation, but was intended to prevent matters
not related to the subject matter of the legislation under consid-
eration from being incorporated into an act without being referred
to in the title.

2. SAME—*provisions fairly tending to effectuate object of an
act as expressed in title are proper.* All provisions may be legiti-
mately incorporated in an act which fairly tend to effect the object·
of the act as expressed in its title, and the constitution is obeyed
if the provisions of the act relate to one subject indicated in the
title and are parts of, incident to or reasonably connected with
such subject.

3. SAME—*all parts of act to suppress mob violence are within
its title.* All parts of the act of 1905, entitled "An act to suppress
mob violence," (Hurd's Stat. 1909, p. 802,) including the provi-
sions of sections 4, 5 and 6 making it a felony to become a member
of a mob, giving a right of action to the families of persons killed
by mob violence and subjecting sheriffs to removal from office for
permitting persons to be taken from their custody by mobs and
lynched, are germane to each other and within the title of the act.

4. SAME—*legislature may authorize Governor to remove officer
elected by people.* While the constitution merely empowers the
Governor to remove those officers whom he may appoint, yet there
is no limitation on the power of the legislature to confer upon the
Governor power to remove a county officer elected by the people.
(*Donahue* v. *County of Will,* 100 Ill. 94, followed.)

5. SAME—*section 6 of Mobs and Riots act is not invalid.* Sec-
tion 6 of the Mobs and Riots act of 1905, which authorizes the
Governor to remove a sheriff who has permitted a person to be
taken from his custody by a mob and lynched, is not invalid upon
the alleged ground that the Governor cannot be empowered to re-
move officers whom he has. not appointed.

6. SAME—*all legislation based upon classification not prohibited.*
The constitutional provision against special legislation does not
prohibit legislation which is based upon a classification, provided
the classification is founded upon a rational difference of situation

or condition existing in the persons or objects which are the subjects of such classification.

7. SAME—*section 6 of the Mobs and Riots act is not invalid as special legislation.* Section 6 of the Mobs and Riots act of 1905 is not invalid as special legislation, in that it subjects sheriffs to removal under the conditions specified, whereas other peace officers, such as coroners, constables and policemen, are not expressly made subject to the same burden, since sheriffs are the principal peace officers of the county, and may, for the purpose of legislation affecting their duties and rights, be placed in a class apart from minor peace officers.

8. OFFICES—*office of sheriff becomes vacant when Governor's removal proclamation is issued.* Under section 6 of the Mobs and Riots act of 1905 the office of a sheriff who has permitted a person to be taken from his custody by a mob and lynched becomes vacant upon the day the Governor's proclamation removing him from office is issued and not upon the day when the deposed officer's application for re-instatement is denied.

9. SAME—*successor of deposed sheriff must be elected if unexpired term exceeds one year.* If the time between the day the Governor proclaims the office of a sheriff vacant under section 6 of the Mobs and Riots act and the end of the term of the deposed sheriff exceeds one year the vacancy in such office must be filled by an election and not by appointment.

FARMER and COOKE, JJ., dissenting.

APPEAL from the Circuit Court of Alexander county; the Hon. W. W. DUNCAN, Judge, presiding.

The State's attorney of Alexander county, in the name of the People, upon the relation of Frank E. Davis, by leave of court, filed an information in the nature of a *quo warranto* against Fred D. Nellis, who was acting as sheriff of said county, praying that he be ousted from said office. The case involves the legality of the action of the Governor in removing from the office of sheriff of Alexander county Frank E. Davis, the relator, on the 18th of November, 1909, and the legality of the appointment of Fred D. Nellis, the respondent, by the board of supervisors of said county on December 23, 1909, to fill the vacancy caused by such removal. The information was in the usual

form and charged the respondent with usurping the office of sheriff of Alexander county. The respondent justified, and by three several pleas set up his title to the office of sheriff of said county. The grounds for the removal of the relator from the office of sheriff of said county by the Governor were, that he suffered a mob to take from his custody, and to kill, two prisoners,—one a negro and the other a white man,—each of whom had been arrested and taken into custody by the relator, as sheriff of said county, upon the charge of murder. The negro, as averred in the first plea, was taken from the relator, as sheriff, by a mob on November 11, 1909, and killed. The second plea averred that a mob, on the night of November 11, 1909, broke into the county jail and took therefrom Henry Salzner, who was confined therein upon the charge of having murdered his wife, and hung and shot him to death. The third plea set out in detail the circumstances attending the taking of each of said prisoners from the relator, as sheriff, and killing them. The negro, William James, it was averred, was being taken by the relator, as sheriff, to some other place than Alexander county for safe keeping and to avoid his being captured by a mob which was threatened and feared, and while the relator was thus moving his prisoner he was overtaken by a mob, who took the prisoner from him, returned with him to the city of Cairo, in Alexander county, and there killed him. Said plea further averred that the mob then proceeded to the jail where Henry Salzner was confined, broke into the jail, beat and broke down the cell in which he was confined, took him therefrom and hung and shot him to death. Each of said pleas averred that on the 18th day of November, 1909, knowledge of such hanging having come to the Governor, he issued a proclamation, pursuant to the statute in such case made and provided, on that day, declaring the office of sheriff of Alexander county vacant and directing the coroner of said county to take possession of the office and execute the duties of sheriff of said

county; that the coroner of said county thereupon, in the absence of the relator, took possession of the office rooms, books, papers and records pertaining to the office of sheriff of said county; that afterwards, on the 18th day of November, 1909, said Frank E. Davis filed with the Governor a petition praying for re-instatement to said office; that he gave the notice required by statute for a hearing of said petition, and that the first day of December, 1909, was fixed by the Governor for said hearing, at which time Frank E. Davis appeared before the Governor with counsel and witnesses and the matter of the right of said Frank E. Davis to be re-instated as sheriff of said county was then and there heard and considered by the Governor, who on the 6th day of December, 1909, found the said Frank E. Davis, as sheriff of said Alexander county, did not do all in his power to protect the lives of said James and Salzner, and then and there denied the prayer of the petitioner for his re-instatement. The pleas further aver that the Governor notified the county board of Alexander county, on December 14, 1909, that the office of sheriff in said county was vacant, and said board, on the 23d day of December, 1909, appointed the respondent, Fred D. Nellis, sheriff of the said county; that said Nellis gave bond, took the oath of office, and on the 24th day of December, 1909, received a commission from the Governor as sheriff of said county, and on that day the coroner and acting sheriff turned over to him the office rooms, books, records and papers pertaining to the office of sheriff of said county, and he then and there entered upon the discharge of his duties as such sheriff and by that warrant he held and executed said office. The respondent interposed a demurrer to said pleas and each of them. The court sustained the demurrer to each of said pleas, and the respondent having elected to stand by his pleas, judgment was rendered against him, finding that he unlawfully usurped, held and executed the office of sheriff of Alexander county and entered a judgment of ouster

against him. The respondent has prosecuted an appeal to this court, and has assigned as error in this court that the trial court wrongfully held that he was not lawfully appointed sheriff of Alexander county, and a cross-error has been assigned challenging the constitutionality of the statute under which the Governor removed Frank E. Davis as sheriff of Alexander county.

LANSDEN & LEEK, for appellant.

ALEXANDER WILSON, State's Attorney, ANGUS LEEK, and WILLIAM S. DEWEY, for appellee.

Mr. JUSTICE HAND delivered the opinion of the court:

The trial court held, by propositions of law submitted to it at the time it disposed of the demurrers to said pleas, that the act of 1905, entitled "An act to suppress mob violence," (Hurd's Stat. 1909, p. 802,) was constitutional and that the relator was lawfully removed by the Governor from the office of sheriff of Alexander county, but that the vacancy caused by such removal occurred on the day upon which the Governor issued his proclamation of removal, which was on November 18, 1909, which date was more than one year prior to the expiration of the relator's term of office, and that said vacancy could not be legally filled by the board of supervisors of Alexander county, and that the attempted appointment of the respondent by said board was illegal and void.

Two questions have been argued in the briefs filed by the respective parties in this court: First, is the act of 1905, under which the relator was removed, a constitutional enactment? and secondly, did the vacancy caused by such removal take place on November 18, 1909, when the proclamation of removal was issued, or did it take place on December 6, 1909, the day the Governor denied the prayer of

the petition of the relator to be re-instated sheriff of Alexander county?

The act involved was adopted by the legislature and approved by the Governor in 1905. Its title is, "An act to suppress mob violence." The first section defines what constitutes a mob. The second section defines the meaning of the term "serious injury" to persons and property, as used in the act. The third section makes the persons who compose a mob with intent to inflict damage or injury upon the person or property of an individual charged with crime, guilty of a misdemeanor and subject to a fine and imprisonment in the county jail. The fourth section makes it a felony for persons composing a mob to by violence inflict material damage upon the property or serious injury upon the person of another under pretense of exercising correctional powers over such person, and makes the penalty for said offense imprisonment in the penitentiary not exceeding five years. The last clause of said section provides that any person suffering material damage to property or injury to person by a mob shall have a right of action against the county or city in which the injury is inflicted for such damages as he may sustain, to an amount not exceeding $5000. The fifth section gives a right of action to the surviving spouse, lineal heirs or adopted children of a person who shall suffer death by lynching at the hands of a mob, against the county or city for damages in a sum not exceeding $5000. The sixth section is as follows:

"Sec. 6. If any person shall be taken from the hands of a sheriff, or his deputy, having such person in custody, and shall be lynched, it shall be *prima facie* evidence of failure on the part of such sheriff to do his duty, and upon the fact being made to appear to the Governor, he shall publish proclamation declaring the office of such sheriff vacant, and his office shall thereby and thereafter immediately be vacated, and the coroner shall immediately succeed to and perform the duties of sheriff until the successor of such sheriff shall

have been duly elected or appointed, pursuant to the existing law providing for the filling of vacancies in such office, and such sheriff shall not thereafter be eligible to either election or re-appointment to the office of sheriff: *Provided, however,* that such former sheriff may, within ten days after such lynching occurs, file with the Governor his petition for re-instatement to the office of sheriff, and shall give ten days' notice of the filing of such petition to the prosecuting attorney of the county in which such lynching occurred, and also to the Attorney General. If the Governor, upon hearing the evidence and argument, if any presented, shall find that such sheriff has done all in his power to protect the life of such prisoner and performed the duties required of him by existing laws respecting the protection of prisoners, then such Governor may re-instate such sheriff in his office and shall issue to him a certificate of re-instatement, the same to be effective on the day of such order of re-instatement, and the decision of such Governor shall be final."

The first contention is that the act embraces numerous subjects which are not included in the title of the act, and that the entire act is in conflict with that part of section 13 of article 4 of the constitution which reads as follows: "No act hereafter passed shall embrace more than one subject, and that shall be expressed in the title," and is void. The basis of this contention is (1) that the fourth section of the act creates a new crime by making it a felony for persons composing a mob to violently inflict material damage upon the property or serious injury upon the person under pretense of exercising correctional powers, and said section also gives a right of action to the person injured, against the county or city in which the injury occurs, for damages; (2) the fifth section confers a right of action upon the surviving spouse, lineal heirs or adopted children of a person who suffers death by lynching, against the county or city, for the recovery of damages in a sum not exceeding $5000;

(3) that the sixth section authorizes the Governor to remove a sheriff from office if any person is taken from his custody by a mob and lynched, and authorizes the Governor, by proclamation, to declare the office of sheriff vacant, and thereupon the coroner shall immediately succeed to and perform the duties of sheriff until a successor has been elected or appointed,—all of which, it is urged, are subjects which are not embodied within the title of the act.

The constitutional requirement that no act of the legislature shall embrace more than one subject and that shall be expressed in its title was not intended to hamper the legislature or to embarrass honest legislation, but was adopted with the view of preventing matters not related to the subject matter of legislation then under consideration from being incorporated into the act then being passed and not referred to in the title of the act. All provisions may be legitimately incorporated into an act which fairly tend to effectuate the object of the act as expressed in the title. (*Town of Manchester* v. *People,* 178 Ill. 285; *Meul* v. *People,* 198 id. 258; *People* v. *McBride,* 234 id. 146.) The constitution is obeyed if all the provisions of the act relate to one subject indicated in the title, and are parts of it or incident to it or reasonably connected with it. (*Burke* v. *Monroe County,* 77 Ill. 610; *People* v. *Nelson,* 133 id. 565; *Ritchie* v. *People,* 155 id. 98; *Hudnall* v. *Ham,* 172 id. 76.) The title of the act now under consideration is, "An act to suppress mob violence," and all provisions of that act are within that title which will reasonably contribute to the suppression of mob violence. It is, we think, too clear for argument that those provisions of said act which provide that persons engaging in mob violence shall be guilty of a felony and subject to imprisonment in the penitentiary will tend to prevent men from joining mobs when assembling and will tend to the suppression of mob violence, and it is, we think, equally clear that the imposing of a liability for damages upon the county or city in favor of the victim of

a mob whenever mobs are permitted to assemble, or, in case of his death, in favor of his widow or heirs or adopted children, will cause the tax-payers of such county or city to discourage the assembling of mobs within such municipalities and will cause all law abiding men residing in such communities to condemn and denounce mob violence, the result of which must be to create respect for the law and its enforcement and to discourage the assembling of mobs. The fact that the sheriffs of the several counties of the State are subject to removal from office in a summary manner for a neglect of duty and a failure on their part to protect prisoners in their custody from being taken from their custody and hanged by a mob will certainly tend to make the sheriffs of the several counties of the State more vigilant and cause them to make greater effort to protect persons in their custody than they would be were they not subject to removal from office and more earnest and courageous in dispersing riotous assemblies, which must have the direct effect to suppress mob violence. We are therefore impressed with the fact that each provision of the act in question will fairly tend to effectuate the object expressed in the title to said act, viz., the suppression of mob violence. While it is true that the title of the act is quite general, that is no objection to the title, as the more general the title the greater the number of particular or subordinate subjects that may be legitimately included within the act. (*Rouse v. Thompson,* 228 Ill. 522.) We are of the opinion that the provisions contained in the several sections of the act are germane to each other and are fairly included within the title of the act.

It is next contended that said act is void in that it attempts to authorize the Governor to remove elective officers and declare their offices vacant, in violation of section 12 of article 5 of the constitution, which limits the power of the Governor in removing officers and declaring their offices vacant, to officers whom he has appointed. That provision

of the constitution reads as follows: "The Governor shall have power to remove any officer whom he may appoint, in case of incompetency, neglect of duty, or malfeasance in office; and he may declare his office vacant and fill the same as is herein provided in other cases of vacancy." It is apparent that said provision of the constitution only applies to officers whom the Governor is given power to appoint and does not apply to an elective officer such as sheriff, who is a county officer and who is elected by the people. The constitution of this State is ordinarily held to be a limitation upon the power of the legislature and not a grant of power to that body, and there being found in the constitution no limitation upon the power of the legislature to provide for the removal of a county officer in case of misfeasance or malfeasance in office, there is nothing in the constitution to prevent the legislature from providing, by statute, that the Governor shall, in a case like the one at bar, have the right to remove a sheriff from office and declare his office vacant.

In *Donahue* v. *County of Will,* 100 Ill. 94, this court had under consideration the constitutionality of a statute conferring power upon county boards to remove county treasurers from office for misfeasance and non-feasance in office, and it was held that the General Assembly of this State had vested in it all legislative power except in so far as this power had been limited by constitutional enactment, and that by reason of such power the General Assembly had the power to prescribe the offense or offenses which should work a forfeiture of the office of Donahue as county treasurer and provide what tribunal should determine whether he was guilty of such offense or offenses as justified his removal. On page 105 of the opinion filed in that case, in discussing the subject then under consideration, it was said: "Knowing, as they did, that the General Assembly had all legislative power unless limited in its exercise, if that body intended that a person, not a State officer or holding under the judiciary article, should not be removed except by the

judgment of a court they would have so provided. They knew that a proceeding by *quo warranto* with the right to appeal would be useless where the term fixed is of short duration, as it would expire before a final decision could be reached. The body, as practical men, could not have intended that such slow processes should be adopted, and thus permit a reckless, dishonest and irresponsible officer to collect and defiantly squander the public revenue, compel his bondsmen to stand by and see him working their financial ruin, and neither the public nor the individuals be able to check it but to wait till his office expires before he is removed or checked in his destructive course. We must presume the framers of the constitution intended to place no limitation on the power of the General Assembly to provide ample and effective means to prevent such wrongs to the public and to individuals. Possessing legislative power, the General Assembly was fully competent to prescribe the offenses which should work a forfeiture of this office and provide what tribunal shall determine the fact. They have provided that defalcation in office shall be grounds of removal of a county treasurer and that the county board should have power to determine the fact and make the removal, and we are clearly of opinion that there is no limitation which forbids the General Assembly from exercising the power."

We think the reasoning of the court in the above case is conclusive of the right of the General Assembly to confer upon the Governor the power to remove from office a sheriff who by his neglect falls within the provisions of the act under which the Governor acted in this case and to declare the office vacant, and that said act is not invalid because it confers upon the Governor powers not authorized by the constitution.

It is next urged that the act of 1905 is in violation of section 22 of article 4 of the constitution of 1870 and the fourteenth amendment to the constitution of the United

States on the ground that it amounts to special legislation, in this: that it places the burden upon sheriffs of the danger of removal from office by the Governor for official misconduct in permitting a prisoner to be taken from their custody, while all other peace officers in the State, such as coroners, constables, policemen, etc., are exempted from such burden. We cannot accede to this view. A sheriff is the principal executive officer of the county and may exercise the powers of a sheriff at common law. (*Dahnke* v. *People,* 168 Ill. 102.) We think, therefore, that a sheriff does not fall within the same class, for the purposes of legislation, that coroners, constables and policemen do, and that the duties of a sheriff and the rights which pertain to his office so far differ from the duties which are imposed upon other police officers in this State, and the rights which pertain to their offices, as to form a proper and legitimate basis for legislation. In fact, such distinction is recognized in the constitution itself and in statutes which have existed in this State from its earliest history, wherein the peace officers of the State have been divided into sheriffs,— the principal executive officer of the county,—and such subordinate peace officers as coroners, constables and policemen. The general rule is, that a classification will suffice as a basis for legislation if such classification is based upon a rational difference of situation or condition found to exist in the persons or objects upon which the classification rests. (*People* v. *Knopf,* 183 Ill. 410; *L'Hote* v. *Village of Milford,* 212 id. 418; *Douglas* v. *People,* 225 id. 536; *Potwin* v. *Johnson,* 108 id. 70; *Reynolds* v. *Town of Foster,* 89 id. 257; *People* v. *Board of Supervisors,* 223 id. 187; *Dawson Soap Co.* v. *City of Chicago,* 234 id. 314.) And it does not follow that a law is not a general law because it does not operate equally upon every individual or officer in the State, but a law is a general law which does operate alike upon all persons or officers in the State who are similarly situated. (*People* v. *Wright,* 70 Ill. 388; *Pot-*

*win* v. *Johnson, supra; People* v. *Board of Supervisors, supra; Dawson Soap Co.* v. *City of Chicago, supra.*) This court has held that there is such a rational difference between the counties of the State which are organized under township organization and those which are not, and between the cities of the State which are organized under special charters and those which are not, as to form a rational basis for legislation. In *Dawson Soap Co.* v. *City of Chicago, supra,* where many of the cases are reviewed and quoted from, it was held that the act of 1887, relating to mobs and riots, and which provides for the recovery by the owner from counties and cities of the value of property destroyed by mobs and rioters assembling therein, was not unconstitutional because there could be no recovery against villages and towns, since, it was held, there was a rational difference between a county and city and a village and town. We are of the opinion that the act is not unconstitutional on the ground that it amounts to special and discriminating legislation. Neither is it void because it is a special law regulating county officers. *Booth* v. *Opel,* 244 Ill. 317.

The statute being constitutional and the relator having been legally removed from office, the next question to be considered is, at what time did the office become vacant? If the vacancy occurred on November 18, the day the proclamation of removal was issued by the Governor, the vacancy was for more than one year and should have been filled by an election; on the contrary, if the vacancy did not exist until December 6, the day on which the Governor declined to re-instate the relator, the vacancy was for less than one year and the office was properly filled by appointment by the county board.

Section 6 of the act provides that if a prisoner shall be taken from the hands of a sheriff or his deputy and lynched it shall be *prima facie* evidence of failure on the part of such sheriff to do his duty, and, upon the fact being made to appear to the Governor, "he shall publish proclamation

declaring the office of such sheriff vacant, and his office shall thereby and thereafter immediately be vacated, and the coroner shall immediately succeed to and perform the duties of sheriff until the successor of such sheriff shall have been duly elected or appointed." ·The language is so clear as not to admit of construction, that upon the Governor issuing his proclamation declaring the office vacant, the office shall, by virtue of such proclamation, immediately become vacant and remain vacant until a successor shall have been duly elected ·or appointed. We therefore conclude that when the Governor issued his proclamation on November 18 the office of sheriff in Alexander county became vacant, and that as on that day the relator had more than one year to serve to complete his term of office the successor of the relator should have been elected and not appointed, and that the appointment of the respondent by the county board was illegal and void, and he was properly ousted from such office.

It is said, however, that the proviso to section 6 provides' for the re-instatement of a sheriff who has been removed by the proclamation of the Governor, and that it should be held that the office is not vacant until the Governor had refused to re-instate the sheriff who had been removed. We do not think such is the true construction of the statute. It does not say the sheriff shall be suspended from his office until the Governor shall determine whether he will re-instate him in his office, but says that upon the issuing of the proclamation the office shall immediately become vacant. Suppose no application for re-instatement is made; when, then, will it be said the vacancy occurs? The appellant replies, when the time for making the application for re-instatement (which is ten days) has elapsed. We do not think this is true, as the statute does not so read. The language of the statute is clear and unambiguous, and we must presume the legislature intended to say what it meant,—that is, that the office should become vacant im-

mediately upon the issuing of the proclamation. Where the language of a statute is clear and certain in its terms, the courts have no right to resort to construction for the purpose of making that indefinite and uncertain which is clear and unambiguous.

The vacancy having occurred on the 18th day of November and more than one year of the time of the relator remaining at the time he was removed from office, the circuit court properly held that the appointment of the respondent by the county board was illegal.

The judgment of the circuit court will be affirmed.

*Judgment affirmed.*

Mr. JUSTICE FARMER, dissenting:

I agree with the judgment of affirmance in this case but do not agree that the statute of 1905, entitled "An act to suppress mob violence," is a valid enactment. We are called upon to review the judgment and determine whether it was the proper judgment to be rendered in the case and whether it should be affirmed or reversed. If it is a correct judgment, it is immaterial by what process of reasoning the court reached its conclusions from which the judgment resulted. The court was called upon to adjudicate appellant's title to the office. He was charged by the information with having unlawfully usurped, held and exercised the office of sheriff. That was the ultimate and material question at issue. The right of relator to the office was not involved. (*Snowball* v. *People*, 147 Ill. 260, and authorities there cited.) The People were not bound to show anything. The appellant was required either to disclaim, or justify by showing title. (*People* v. *Bruennemer*, 168 Ill. 482; *Place* v. *People*, 192 id. 160; *Carrico* v. *People*, 123 id. 198.) He attempted to justify, and the only issue to be determined was, did he by his pleas show a valid title to the office? If the alleged vacancy appellant was appointed to fill occurred more than one year before

the expiration of the term for which relator had been elected the pleas were bad and the court could only properly enter a judgment of ouster. This court must affirm or reverse the judgment of the circuit court. A reversal could result only from holding that the act of 1905 is valid and that the vacancy appellant was appointed to fill occurred less than one year before the expiration of relator's term of office. If the unexpired term appellant was appointed to fill was more than one year, his title must fail whether the law was constitutional or not. If the circuit court was right in holding the vacancy was for more than one year, then no other judgment could have been rendered than the one rendered by that court. This court agrees with the circuit court upon the proposition that if there was a vacancy in the office of sheriff of Alexander county the unexpired term was more than one year. Our judgment, therefore, must be one of affirmance, whatever opinion we may entertain as to the constitutionality of the law.

The sixth section of the statute does not apply to all peace officers charged with the arrest and custody of persons accused of crime, and denies to sheriffs, as one class of peace officers, the equal protection of the laws, in violation of the fourteenth amendment to the constitution of the United States, and violates section 22 of article 4 of our State constitution, in that it is a discrimination against sheriffs and confers special privilege and immunity upon others under like circumstances and similarly situated.

The offices of coroner, justice of the peace, police magistrate and constable are created by the constitution. Section 6 of chapter 31 of Hurd's Statutes makes a coroner conservator of the peace in his county and gives him the same powers in the performance of his duties as are given to sheriffs. Paragraph 340 of the Criminal Code makes it the duty of every sheriff, coroner, constable, and every marshal, policeman or other officer of any incorporated city, town or village having the power of a sheriff or constable,

when a criminal offense or breach of the peace has been committed or attempted in his presence, to apprehend the offender and bring him before some justice of the peace, to be dealt with according to law. Other provisions of the statute authorize the issuing of warrants directed to all sheriffs, coroners and constables for the arrest of persons accused of crime, and direct sheriffs, coroners and constables to execute such process without delay. In these respects the duties of sheriffs, coroners and constables are similar, but section 6 of the act under consideration applies to sheriffs only. It makes taking a prisoner from the custody of the sheriff and lynching him *prima facie* evidence that the sheriff did not do his duty and authorizes the Governor to remove him from office. No such authority is conferred upon the Governor with reference to a coroner, constable or other peace officer from whose custody a prisoner is taken and lynched. It is competent for the legislature to classify persons and subjects and to enact a law applicable to such class or subjects, but the classification can not be an arbitrary one and the law must be applicable to all persons similarly situated. It is true that all peace officers are not charged with the same duties and clothed with the same powers as sheriffs, but their duties to protect and safely keep from mob violence prisoners in their custody are the same, and it is difficult to see any reasonable distinction with respect to these matters between sheriffs and other officers similarly situated and charged with the same duties. It is argued that the sheriff is the custodian of the jail wherein prisoners in his custody are usually confined, but the law authorizing the sheriff's removal is not limited to cases where prisoners confined in jail are taken from the custody of the sheriff or his deputy and lynched. In this case one of the prisoners was not in jail when taken from the sheriff, but the plea alleges the prisoner was taken from the sheriff while *en route* to another county, to which the prisoner was being taken in order to escape a mob that was

reported to be assembling in the city of Cairo. In my opinion there is no reasonable basis for the arbitrary distinction made by the statute between sheriffs and other peace officers under precisely the same circumstances and conditions. It is fundamental that a classification for legislative purposes, to be valid, must operate equally and uniformly upon all brought within the relation and circumstances for which the law provides. *Gulf, Colorado and Santa Fe Railway Co.* v. *Ellis,* 165 U. S. 150; *Connolly* v. *Union Sewer Pipe Co.* 184 U. S. 450; *Horwich* v. *Walker-Gordon Laboratory Co.* 205 Ill. 497; *Lippman* v. *People,* 175 id. 101; *People* v. *Martin,* 178 id. 611; *Eden* v. *People,* 161 id. 296; *Jones* v. *Chicago, Rock Island and Pacific Railway Co.* 231 id. 302; *Starne* v. *People,* 222 id. 189.

The object of the act in question is to protect prisoners from being lynched by mobs. Authority in the Governor to remove a sheriff from office who suffers a prisoner to be taken from his custody by a mob and lynched was intended to cause such officer to use all means in his power to prevent the prisoner being taken from his custody. The sheriff is not the only officer who has prisoners in his custody, and it is no more his duty to prevent a mob killing his prisoner than it is of other officers having custody of a prisoner. It is as great a wrong and the public is as injuriously affected by a mob taking a prisoner from a coroner or constable as from a sheriff. In the case of a sheriff, taking the prisoner from his custody and lynching him is *prima facie* evidence that the sheriff did not do his duty, but this is not so if the prisoner is taken from some other officer having custody of him and whose duty to protect the prisoner is the same as that of a sheriff. I am unable to see any reason for the distinction made by the act, and to me it seems that section 6 is in violation of the fourteenth amendment to the constitution of the United States and of section 22 of article 4 of the constitution of this State. Without that section the act would not be a complete one for

the purpose for which it was intended, and it cannot be presumed that the legislature would have passed the act without that section or if it had been known to be invalid.

Mr. JUSTICE COOKE: I concur in the foregoing dissenting opinion of Mr. Justice Farmer.