In the

# United States Court of Appeals

## For the Seventh Circuit

No. 09-3092

LEE MERCADO, *et al.*,

*Plaintiffs-Appellees*,

*v.*

THOMAS J. DART, Sheriff of Cook County, Illinois,

*Defendant-Appellant*.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 06 C 552—**Matthew F. Kennelly**, *Judge*.

ARGUED APRIL 5, 2010—DECIDED APRIL 28, 2010

Before EASTERBROOK, *Chief Judge*, and BAUER and WOOD, *Circuit Judges*.

EASTERBROOK, *Chief Judge*.   A class of persons detailed at the Cook County Jail contends in this suit under 42 U.S.C. §1983 that the Sheriff of Cook County (who runs the Jail), and his staff, have subjected them to needlessly humiliating strip searches (including body-cavity searches). Plaintiffs have other contentions as well, and the district judge has certified subclasses to pursue dif-

ferent claims. The current appeal, by the Sheriff (other defendants have not joined this appeal), concerns only searches after February 2007 of detainees when they first arrive at the Jail.

The district judge concluded that, because the class's claims arise from the manner rather than the fact of these searches, the holding of *Bell v. Wolfish*, 441 U.S. 520, 558–62 (1979), does not vindicate the Sheriff's position. A jury trial was held. At the close of the proofs, the Sheriff filed a motion for judgment as a matter of law. Fed. R. Civ. P. 50. He argued that Illinois requires jailers to conduct strip searches and that, when complying with this rule, a sheriff or other custodian is part of "the state" for the purpose of the doctrine of state sovereign immunity recognized in *Hans v. Louisiana*, 134 U.S. 1 (1890).

The parties call this "eleventh amendment immunity," which is triply inaccurate—first because *Hans* did not interpret the eleventh amendment, whose text is limited to diversity suits; second because the eleventh amendment limits the jurisdiction of federal courts rather than establishing an immunity, see *Calderon v. Ashmus*, 523 U.S. 740, 745 n.2 (1998); *Ruehman v. Sheahan*, 34 F.3d 525, 527 (7th Cir. 1994); and third because a state (including a state officer sued in an official capacity) is not a "person" for the purpose of §1983. *Will v. Michigan Department of State Police*, 491 U.S. 58 (1989). That statutory rule makes it unnecessary and inappropriate to consider what limits the eleventh amendment would create. *Lapides v. University System of Georgia*, 535 U.S. 613, 617–18 (2002); see also *Arizonans for Official English v. Arizona*, 520 U.S. 43,

69 (1997). For reasons discussed below, however, it does not matter whether "eleventh amendment immunity" is a useful shorthand for the Sheriff's position.

The district judge observed that the theory behind the Rule 50 motion was being raised for the first time even though the suit had been pending for three years. The judge deemed the contention forfeited and submitted the case to the jury, which returned a verdict in favor of the class on liability. Because the trial had been bifurcated, the next stage was the presentation of evidence about damages. But, before that phase could begin, the Sheriff filed a notice of appeal, contending that the rejection of his theory is immediately appealable under *Puerto Rico Aqueduct & Sewer Authority v. Metcalf & Eddy, Inc.*, 506 U.S. 139 (1993).

*Metcalf & Eddy* applies to sovereign immunity the approach to interlocutory appeals developed by *Mitchell v. Forsyth*, 472 U.S. 511, 525–30 (1985), for situations in which a public official asserts an absolute or qualified immunity. We assume (without deciding) that the Supreme Court would extend this understanding of the collateral-order doctrine, see *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541 (1949), to an appeal by a state official who contends that the definition of the word "person" in §1983 means that a suit is untenable—though that extension of *Mitchell* would bring the doctrine awfully close to authorizing interlocutory review of the merits. (Sovereign immunity does not apply because §5 of the fourteenth amendment empowers Congress to subject states to suits for violations of that amendment.

See *Fitzpatrick v. Bitzer*, 427 U.S. 445 (1976). The class contends that the Sheriff violated the fourteenth amendment, directly and via its incorporation of the fourth amendment. So Congress could authorize a suit such as this against a state, though *Quern v. Jordan*, 440 U.S. 332 (1979), holds that §1983 does not do so.) Even on the assumption that *Mitchell* applies to appeals of this kind, however, the Sheriff's appeal must be dismissed for want of jurisdiction.

Like any other application of the collateral-order doctrine, *Mitchell* depends on characterizing the decision under review as "final," because *Mitchell* interprets 28 U.S.C. §1291, a statute that makes finality essential to appellate jurisdiction. *Mitchell* rests on the view that, as a practical matter, an order declining to dismiss a complaint, or denying a motion for summary judgment, finally resolves the defendant's assertion of a "right not to be tried"—for an immunity (unlike a defense on the merits) confers an entitlement to be free of the judicial process as well as an entitlement to avoid an adverse judgment. An order rejecting a claim of immunity is final in the two senses that matter to *Mitchell* and its successors: it represents the district court's definitive resolution, and it subjects the defendant to the judicial process, with all of the costs that discovery and trial produce. When a district court postpones resolution until it has received additional submissions from the litigants, it has not made a decision that is "final" in *Mitchell*'s sense. See *Khorrami v. Rolince*, 539 F.3d 782, 786–87 (7th Cir. 2008). And when the defendant's contention does not invoke a "right not to be tried," the foundation for an interlocutory appeal is missing.

To date, the Supreme Court has treated only two kinds of orders as "final" for the purpose of an immunity appeal: denial of a motion to dismiss the complaint and denial of a motion for summary judgment. See generally *Behrens v. Pelletier*, 516 U.S. 299, 305–11 (1996). These two orders often are the outcome of focused engagements after full briefing; each represents the end of a discrete stage in the litigation, during which the legal issue has crystallized and been resolved as a matter of law. Oral denial of a mid-trial motion under Rule 50, by contrast, is not final by that standard. It is possible to see how an order denying a motion for summary judgment can be called "final" for some purposes even though the judge has allowed the suit to proceed; but a mid-trial ruling is not "final" for *any* purpose. It is a step on the way to a verdict. And a mid-trial motion under Rule 50 does not assert a "right not to be tried" or even a "right to be free of costly discovery"; it asserts a right to *win* (that's why it is called a "motion for judgment as a matter of law"). Discovery and trial have occurred by the time lawyers start making Rule 50 motions. A judge's oral statement allowing the trial to proceed may presage a final decision (judgment on the verdict) but is not itself a final decision.

It is hard to imagine that the Justices have authorized public officials to bring trials to a halt and disband the jury while a pre-verdict appeal proceeds. As a practical matter that would give every public official a right to a mistrial in every §1983 suit that seemed to be going the plaintiff's way, because once a trial stops jurors are likely to forget the evidence, to come across information

they are not supposed to read, to discuss the trial with friends and relatives, or all three. Appellate delay would compel the trial to start over with a new jury. Although a district judge is entitled to certify that an appeal is frivolous and proceed with the litigation, see *Apostol v. Gallion*, 870 F.2d 1335 (7th Cir. 1989), the need for this procedure (and for the court of appeals to consider whether to stay the trial notwithstanding an *Apostol* certification) would throw a monkey wrench into the proceedings. And at a second trial the public official could force still another mistrial, because *Behrens* holds that there is no numerical limit on the number of permissible interlocutory appeals in a single case. The only requirement is that each order sought to be appealed be "final" under *Mitchell*.

Thus both formal reasons (a mid-trial order is not "final" and does not concern a "right not to be tried") and practical ones (the need to prevent defendants from thwarting the completion of ongoing trials and disrupting the orderly management of litigation) lead us to conclude that a district judge's oral statement denying a mid-trial Rule 50 motion is not appealable as a "collateral order" under §1291.

Should bifurcated trials be treated differently? The Sheriff did not file his appeal until the jury had returned its verdict on liability. Perhaps one could say that the Sheriff was asserting a "right not to be tried" on the damages phase of the litigation. Attaching dispositive significance to the fact that the district judge chose to bifurcate the trial might turn what is supposed to be an

economizing measure (the liability phase is easier to manage if damages evidence is postponed) into an occasion for a prolonged interruption. But just in case the Justices should conclude that there is a difference between a mid-trial Rule 50 decision in a unitary trial and a mid-trial Rule 50 decision in a bifurcated trial, we add that *this* appeal must be dismissed anyway, because it is frivolous.

The district judge thought the appeal frivolous because the Sheriff forfeited this theory of immunity by raising it for the first time at the end of trial. (Earlier he had raised other theories related to sovereign immunity, but this one was a novelty in the litigation.) The judge was right to find a forfeiture, though this does not necessarily render the appeal frivolous. Appellate courts sometimes relieve the parties of forfeitures, especially when the litigation is against a public official in a representative rather than a personal capacity. See, e.g., *Day v. McDonough*, 547 U.S. 198 (2006); *Granberry v. Greer*, 481 U.S. 129 (1987); *Ford Motor Co. v. Department of Treasury*, 323 U.S. 459, 466–67 (1945); *Indiana Protection and Advocacy Services v. Indiana Family and Social Services Administration*, No. 08-3183 (7th Cir. Apr. 22, 2010) (en banc). But this appeal is *substantively* frivolous. It is nothing but a delaying tactic and deserves to be swiftly squelched. Cf. *Abney v. United States*, 431 U.S. 651, 662 n.8 (1977).

The Sheriff of Cook County, a local official, is not "the state" for the purpose of either Illinois or federal law, and therefore the Sheriff is a "person" as §1983 uses that word. (City and county officials also are not "states" for

the purpose of the eleventh amendment and related doctrines of sovereign immunity, see *Northern Insurance Co. v. Chatham County*, 547 U.S. 189, 193–94 (2006); *Lincoln County v. Luning*, 133 U.S. 529, 530 (1890)—though, as we have said already, only the definition of "person" matters to this suit.) The Sheriff's contrary argument proceeds in two steps: first, he contends that Illinois law *requires* all sheriffs to conduct strip searches of all inmates arriving at county jails; second, he maintains that any local official whose conduct is dictated by state law is "the state" to the extent of that obligation. It follows, the Sheriff concludes, that he is not a "person" under *Will* (or, in his own language, that he has "eleventh amendment immunity"). Neither premise of this syllogism is sound.

1. The state law on which the Sheriff relies is 20 Ill. Admin. Code §701.40(f), a regulation that specifies procedures for admissions to county jails. It provides:

> 1) A strip search shall be performed in an area that ensures privacy and dignity of the individual. The individual shall not be exposed to the view of others who are not specifically involved in the process.
>
> 2) Strip searches shall be conducted by a person of the same sex.
>
> 3) All personal clothing shall be carefully searched for contraband.
>
> 4) The probing of body cavities may not be done except where there is reasonable suspicion of

contraband. Intrusive searches may only be conducted:

> A) By a medically trained person who is not a detainee, for example, a physician, physician's assistant, registered nurse, licensed practical nurse, or paramedic; and

> B) In a private location under sanitary conditions.

The Sheriff reads this regulation as if it said "[a] strip search shall be performed" and the sentence stopped there. Plaintiffs, by contrast, read the language as a requirement that strip searches, *if* performed, "shall be performed in an area that ensures privacy and dignity" (and so on). In other words, the Sheriff treats the "shall" in this construction as compelling a strip search, while the plaintiffs treat it as compelling the preservation of dignity.

Either reading is possible, because "shall" is a notoriously slippery word. See, e.g., *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 432–33 & n.9 (1995). One reason to think that the Sheriff's reading is sensible is subsection (b), which says: "Detainees shall be given an immediate frisk search." This uses "shall" in the same way that the Sheriff thinks that the word works in subsection (f). But if subsection (f) directs the Sheriff to conduct a strip search of every newly admitted detainee, it *also* directs the Sheriff to conduct each search in a dignified manner, and to refrain from conducting a body-cavity search "except where there is reasonable suspicion of contraband".

Plaintiffs have not contended in this suit that the Jail's practice of conducting strip searches of detainees first entering the jail violates either the federal Constitution or Illinois law. Rather the plaintiffs contend, and the jury found, that the *manner* of the search is unreasonable and thus violates the fourth amendment as well as §701.40(f). No matter how favorably to the Sheriff subsection (f) is read, it does not compel him or his staff to perform any of the acts—such as having large numbers of detainees drop their pants simultaneously to raucous hooting and taunts from guards of both sexes—that have led to this litigation and the jury's verdict. And because no plausible understanding of subsection (f) treats it as authorizing, let alone commanding, the challenged practices, the major premise of the Sheriff's argument has not been established. (We assume for this purpose that the evidence supports the class's view of matters; an interlocutory appeal under *Mitchell* does not authorize a court of appeals to resolve factual disputes. See *Johnson v. Jones*, 515 U.S. 304 (1995).)

2. The minor premise also is wrong. The proposition that anyone who obeys state law must be "the state" is not supported by any rule or decision of which we are aware. We asked the Sheriff's lawyer at oral argument if a business that puts soot scrubbers on its smokestack, in compliance with regulations under the Clean Air Act of 1970, would be "the federal government" for purposes of citizen suits under that statute (which therefore would have to be dismissed as barred by sovereign immunity). Counsel answered yes but could not supply authority for the proposition, which if true would make

many state and federal laws unenforceable by entitling private defendants to the benefit of sovereign immunity. The National Labor Relations Act requires employers to recognize and bargain with unions that are supported by a majority of its workers; does this turn all collective bargaining into an activity by the federal government? The Fair Labor Standards Act sets minimum wages; do employers act as "the United States" when they pay (or fail to pay) the legally required wages?

The Sheriff may be confused by the fact that some public officials in Illinois serve in dual capacities. Each county has a State's Attorney. That official is "the state" when representing the state (all criminal prosecutions are brought in the state's name) and "the county" when representing the county (which he serves as its lawyer in civil suits). See *National Casualty Co. v. McFatridge*, No. 09-1497 (7th Cir. Apr. 28, 2010), slip op. 12–14 (discussing this dual-capacity status). But it does not follow from the fact that one person may be an official of two different public entities that every person who is subject to state or federal law is "the sovereign" whose law he obeys. A sheriff in Illinois may perform some tasks on behalf of the state—so we assumed in *Scott v. O'Grady*, 975 F.2d 366 (7th Cir. 1992)—but when running the county jail he is a county official. *DeGenova v. Sheriff of DuPage County*, 209 F.3d 973, 976–77 (7th Cir. 2000); see also Ill. Const. Art. VII §4(c); *People ex rel. Davis v. Nellis*, 249 Ill. 12, 21, 94 N.E. 165, 169 (1911).

That some rules for the conduct of county officials (and private citizens) are set by a state does not make that

person "the state" for the purpose of §1983, the eleventh amendment, or doctrines of sovereign immunity. Status of an entity as "the state" depends on the organization chart and not on whose law supplies the substantive rule or who pays the judgments. See *Regents of University of California v. Doe*, 519 U.S. 425 (1997).

Sometimes a person who follows another sovereign's commands is entitled to offsetting benefits. For example, a person acting on the directions of a federal agency may be treated as a "person acting under" that agency, which entitles the person to remove any litigation to federal court. See 28 U.S.C. §1442(a)(1); *Watson v. Philip Morris Cos.*, 551 U.S. 142, 151–52 (2007). A vendor that sells products made strictly according to a federal buyer's specifications is not liable to private persons in tort for defects in those products. See *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988). And a private firm that complies with a state law that replaces competition with regulation does not violate the antitrust laws, even when an identical private agreement would be deemed unlawful *per se*. See, e.g., *Parker v. Brown*, 317 U.S. 341 (1943). But rules such as these are a far cry from a norm that anyone whose behavior is controlled by state or federal law *must be treated as part of the government*, and suits against it dismissed by operation of sovereign immunity or the limited scope of the word "person" in §1983.

The Sheriff is responsible for his own policies—and as a state actor (but not himself "the state") for any uncon-stitutional policies that Illinois has directed him to im-

plement. This interlocutory appeal is dismissed because it is not from a "final decision" and because it is frivolous. Any remaining arguments are open to review on appeal from the final decision.