THE PEOPLE *ex rel.* Francis P. Gleeson

*v.*

GEORGE A. MEECH.

*Filed at Springfield Sept. 30, 1881—Rehearing denied January Term, 1882.*

1. JUSTICES OF THE PEACE—*uniformity of jurisdiction embraces territorial jurisdiction.* The territory in which a justice of the peace may act, or send process for service, is essential, and constitutes jurisdiction, and is referred to and embraced in the constitutional provision requiring uniformity of jurisdiction, and the provision prohibiting the passage of local or special laws regulating the jurisdiction and duties of justices of the peace.

2. SAME—*what is uniformity in territorial jurisdiction.* The constitution does not require that the districts within the limits of which the jurisdiction of justices of the peace and police magistrates is restricted or confined shall be of uniform size, but that such districts shall be created by counties or townships, and not partly of both, so that their jurisdiction throughout the State shall be coëxtensive with the counties in which they are elected; or limited to townships, if townships are adopted as the basis for districting.

3. CONSTITUTIONAL LAW—*creation of districts for justices of the peace.* The act of 1881, to amend certain sections of the act relating to the election

of justices of the peace, creating each county in the State, except Cook county, a district, and making two districts of Cook county, and limiting the jurisdiction of such officers within such districts, is in contravention of that part of the constitution which requires that the jurisdiction of justices of the peace shall be uniform, and also of that part which prohibits the passage of any local or special laws regulating the jurisdiction of justices of the peace, such amendment operating to change the preëxisting law on the subject only in Cook county.

This is a petition for a *mandamus,* filed in this court by Francis P. Gleeson, against George A. Meech.

The relator, a resident of the town of South Chicago, in Cook county, demanded of the respondent, a justice of the peace in the same town, that he issue a summons, directed to any constable of Cook county, pursuant to the act of 1872, and tendered respondent his legal fees for such act, in order that the relator might have the writ served in the town of Hyde Park, in Cook county. This the respondent refused to issue, and refused to issue any writ except to a constable of "Chicago District," pursuant to the amendatory act of 1881. Hyde Park is in that part of Cook county denominated "Cook District" by the amendatory act.

The respondent filed a demurrer to the petition, which this court in its judgment overruled.

Mr. C. STUART BEATTY, for the relator.

Messrs. LAWRENCE, CAMPBELL & LAWRENCE, for the respondent.

Mr. JUSTICE WALKER delivered the opinion of the Court:

The petition in this case was filed to test the constitutionality of the first section of "An act to amend certain sections of an act to provide for the election and qualification of justices of the peace," etc. (Laws 1881, p. 103.) That section provides that each county in the State shall constitute a justice's district, except Cook county, which is divided into two,—the city of Chicago one, and the territory outside of the

city and within the county, another,—and to the limits of such districts the jurisdiction of all justices of the peace is expressly limited. It is claimed that this provision of the act contravenes several provisions of the constitution.

Section 21 of article 6 provides, "that justices of the peace, police magistrates and constables shall be elected in and for such districts as are or may be provided by law, and the jurisdiction of such justices of the peace and police magistrates shall be uniform." The 28th section of the same article, however, makes an exception as to the city of Chicago, and requires that justices of the peace for the city shall be appointed in the manner therein prescribed. The 22d section of article 4 provides, that the General Assembly shall not pass any local or special laws in reference to a large number of subjects, amongst which is this, "regulating the jurisdiction and duties of justices of the peace, police magistrates and constables." Other provisions of the constitution are referred to, but we deem it unimportant in this case to refer to them.

Of what does the jurisdiction of justices of the peace and police magistrates consist? Manifestly of the persons of the parties litigant, of the subject or thing in dispute, and the territory into which the process of the officer may run and be enforced. We apprehend this is so elementary that it will not be questioned. The justice must have power or jurisdiction to send process into some territory, by the service of which process he may acquire jurisdiction of the defendant, or the other elements of his jurisdiction would be barren, unless the defendant should voluntarily submit to the jurisdiction for trial. And so of final process, which is absolutely necessary to execute the judgment. His territorial jurisdiction is as essential to the complete administration of justice as either of the others, and the General Assembly fully recognizes the power to send process into a district, and to have it enforced therein, as constituting jurisdiction. After pre-

scribing the districts, the act provides, that "to the limits of which the jurisdiction of all justices of the peace is hereby limited." It, then, incontestably follows, that the territory in which a justice of the peace may act is essential, and constitutes jurisdiction, and is referred to and embraced in both provisions of the constitution cited above.

This, then, being the sense of these provisions, the territorial districts must be uniform. Then what constitutes uniformity, in the constitutional sense? Not literally of one and the same shape or size. That could not have been the purpose. And this is made manifest from the constitution itself. It refers to districts as then existing, or that might thereafter be provided by law. The districts then existing were not of the same form or size, and yet they were adopted by those who framed the constitution. We must, therefore, conclude that such was not the purpose, and for the further reason that if not impracticable, it would have served no useful purpose. Uniformity of territory, then, must refer to some other division of territory. At the time the constitution was adopted the territorial jurisdiction of justices of the peace was coëxtensive with their counties throughout the State, and has ever been since the organization of the government, and the constitution adopts that division until a change shall be made, which it authorizes, with the limitation that when made the jurisdictional districts shall be uniform. And to be uniform, what does that instrument require? Manifestly, when counties are adopted as a basis of districting, that no other political division but counties can be adopted in part; or, when townships are adopted as the basis, it must all be by townships, and no other political division can be in part adopted. And so, when any other political division is adopted, to be uniform it must all be of such divisions. This is, we think, the true interpretation of the clause requiring uniformity of jurisdiction, and it follows that the formation of Cook county into two

districts, whilst every other county in the State constitutes but one district, is a violation of the constitutional requirement of uniformity.

Is this a local or special law, within the meaning of the 22d section of article 4 of the constitution? Had there been but one section in the act, and it had referred to no other than Cook county, and had divided it, as is done by this act, could any one have entertained a doubt that it was a local or special law? We apprehend not. Then, when it declares that all other counties shall severally constitute a district, which they then were, and then divides Cook county, upon what principle, or for what reason, can it be said that it is not a local or special law? We are wholly unable to perceive. We must look to the substance of the act, and not to its mere form. Upon what does this section operate? Unquestionably upon Cook county alone. Strike all else out than what relates to Cook county, and no change would be made as to the jurisdiction of justices of the peace outside of Cook county. They then had jurisdiction throughout their counties, and if all that is said in reference to them in this section were rejected, their jurisdiction would be precisely the same. This section neither limits nor confers power or jurisdiction on them. This section is therefore local or special to Cook county, and contravenes the 22d section of the legislative article of the constitution, and is therefore void.

It may be urged that this is a very strict construction of the fundamental law. There seems to be no doubt that those who gave us that instrument had in their minds, and fully appreciated, the great wrongs, oppression, and almost disastrous results of special legislation that had obtained under the constitution of 1848, and the fact that such legislation conferred special privileges and exemptions on the few to the injury of the many, which was totally opposed to the principles upon which our institutions are based. They determined to effectually cut off such pernicious legislation by this pro-

vision.   This law is desired in Cook county, because it confers privileges or exemptions to a part of its inhabitants that
are not enjoyed in common by the people at large.   The first
section proposes to exempt debtors from being sued out of
the district in which they may live, although both districts
may be in the same county.   If this provision should be
upheld, then a person residing in the city could not be sued
beyond its limits, nor could a person residing out of its limits
be sued in the city, without reference to the convenience or
residence of the witnesses.   These privileges, or burthens,
whichever they might prove to be, are local and special.

If this provision were sustained, it would open the way to
every species of special legislation on the subject of territorial jurisdiction of justices of the peace.   In a portion of the
counties it would be coëxtensive with their boundaries; in
others, it would be confined to the township in which the
justice might reside; in others, justices in townships on
county lines might send process into adjoining townships in
other counties.   In some the suits might be confined to the
residence of the plaintiff, and others to the township of the
debtor; and a large number of other special laws might be
suggested.   In some of the counties most of such special
laws might be in force at the same time, thereby creating
confusion, without any benefit to the public, and all apparently for the benefit or convenience of the debtor or wrong-
doing class.

If this provision is constitutional, can any one imagine a
local or special law on this subject that could be distinguished
from it and held unconstitutional?   The effects of this particular provision might not be serious, but others that would
certainly follow might prove highly pernicious.   If, by a
strained or even a liberal construction, this provision might
be sustained, still it would be against the intention of the
framers of the constitution.   This would be the opening
through which all kinds of obnoxious legislation on this sub-

ject would pass. This section was intended to restrict the power of the General Assembly from passing any local or special law on the subject of the jurisdiction of justices of the peace. This is a local and special law relating to their jurisdiction, and is clearly unconstitutional.

The demurrer to the petition must therefore be overruled, and a peremptory writ of *mandamus* is awarded.

*Mandamus awarded.*