(No. 14405.—Judgment reversed.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* E. W. KASTINGS, Plaintiff in Error.

*Opinion filed February 21, 1923.*

1. CONSTITUTIONAL LAW—*objects of legislation may be properly classified.* It is lawful, within certain bounds, to classify objects for the purpose of legislative control and adopt legislation applicable only to such objects where the classification is based upon some substantial difference which bears a proper relation to the classification.

2. SAME—*legislation may apply to taxicabs and exclude other motor vehicles.* In statutes for the public safety it is proper to classify taxicabs as separate from other motor vehicles, such as jitney busses, which have a defined route, and motor trucks and private pleasure or business cars, and the State may make regulations requiring the giving of reasonable bonds to insure adequate compensation for injuries to persons or property from the operation of taxicabs in large cities.

3. SAME—*cities may be classified on basis of population—motor vehicles.* The legislature may classify cities on the basis of population and enact laws applicable to each class where there is a reasonable basis for the classification in view of the objects and purposes to be accomplished by the legislation; and the amendment of 1921 adding certain sections to the Motor Vehicle act (Laws of 1921, p. 580,) in regard to the operation of taxicabs is not local or special legislation because limited in its application to cities having a population of 100,000 or more.

4. BONDS—*a statute requiring giving of bonds cannot provide continuing and indefinite liability.* A statute requiring the giving of bonds to insure compensation for injuries to persons or property is unreasonable if it provides that the sureties thereon will continue to remain liable even though the recoveries for the injuries exceed the amount for which the bond is given.

5. MOTOR VEHICLES—*act of 1921 adding certain sections to Motor Vehicle act regarding operation of taxicabs is invalid.* The act of 1921 (Laws of 1921, p. 580,) adding sections 42*a*, 42*b*, 42*c* and 42*d* to the Motor Vehicle act, requiring the operators of taxicabs to insure their liability for injuries to persons or property or to give bonds for such liability, is unreasonable in requiring a bond of $10,000 for each taxicab, signed by sureties whose property is unincumbered, in providing a continuing liability for the sureties and in making the owner practically an insurer against defects in

the construction of his car; and the restrictions as to the bonds tend to discriminate against taxicab operators who own their own cars and who cannot pay for insurance in lieu of bonds.

6. POLICE POWER—*reasonableness of application of police regulation is a judicial question.* Police regulations must be reasonable when applied to corporations or individuals, and what are reasonable regulations and what are subjects of police power are necessarily judicial questions.

WRIT OF ERROR to the Municipal Court of Chicago; the Hon. THEODORE F. EHLER, Judge, presiding.

FREDERICK W. SNIDER, for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, ROBERT E. CROWE, State's Attorney, and CLARENCE N. BOORD, (EDWARD E. WILSON, of counsel,) for the People.

JOHN H. S. LEE, *amicus curiæ.*

Mr. JUSTICE DUNCAN delivered the opinion of the court:

Plaintiff in error, E. W. Kastings, was convicted in the municipal court of Chicago upon an information charging that on September 22, 1921, in the city of Chicago, he unlawfully operated along and upon the public streets and highways of the city a certain motor vehicle commonly known as a taxicab, for the carrying of passengers for hire, indiscriminately accepting and discharging all such persons as did then and there offer themselves for transportation, without having complied with the provisions of "An act to add sections 42a, 42b, 42c and 42d to the Motor Vehicle law, approved June 30, 1919, in force January 1, 1920," (Laws of 1921, p. 580,) and was fined $100 and costs of suit. Under stipulation the only question to be determined in the case was the validity of the statute which he was charged with violating, and his writ of error was therefore sued out of this court in the first instance for a review of the record.

The following facts relating to the character of the business engaged in by the defendant and to the conditions under which said occupation was pursued, and showing that the statute in question applied to the city of Chicago, were stipulated:

"*First*—The defendant is a chauffeur, and on September 22, 1921, and for many days both before and after said date, operated a taxicab, a motor vehicle for the carriage of passengers for hire, in, upon and along the streets and highways of said city.

"*Second*—He operated a taxicab for the carriage of passengers for hire, indiscriminately accepting and discharging all such persons as offered themselves for transportation on the date aforesaid.

"*Third*—The taxicab so operated by the defendant, and all other taxicabs operated within the corporate limits of said city, ordinarily carry but one or two passengers and never in excess of six passengers; that he and all the other taxicab operators in the city hold their cabs for hire at a garage or at certain public stands set aside under the ordinances and regulations of the city; that his taxicab and all other taxicabs in the city accept business by solicitation from time to time, but his taxicab and such other taxicabs are not operated on any time schedule or schedules or between fixed termini; that the fare charged for each trip is determined by means of a taximeter attached to the taxicab which has been heretofore inspected by the proper department of the city; that the defendant's taxicab and said other taxicabs travel to all places, especially such as are inaccessible by the ordinary methods of transportation.

"*Fourth*—The taxicab of the defendant and all other taxicabs so operated are licensed by the city of Chicago to use the stands aforementioned and the streets and highways of Chicago under ordinances of the city, for profit.

"*Fifth*—The so-called jitney busses or motor busses operating upon and along certain routes and between fixed

termini in the city, or operating under and by virtue of a franchise given to said jitney-bus or motor-bus companies, obtained from the Public Utilities Commission (now called the Illinois Commerce Commission) of the State of Illinois, under and by virtue of the powers vested in said commission by the statute of the State of Illinois, differ from said taxicabs in that the said busses have a regular route.

"*Sixth*—The defendant has never obtained or furnished or filed or given or tendered in any manner any bond or insurance policy as prescribed by the statute in such case made and provided, and has not filed with the Secretary of State of the State of Illinois any application for the approval of any such bond or insurance policy, as prescribed in such statute made and provided.

"*Seventh*—The city of Chicago is a municipal corporation organized and existing under the laws of Illinois and is situated in the county of Cook in said State, and for more than twenty years last past has been and is a city having a population exceeding 100,000 inhabitants; that the population of the city during the year 1921 has been approximately 2,800,000 inhabitants.

"*Eighth*—The streets and highways over which said taxicabs operate in their business are very congested with pedestrians and motor vehicle traffic. They operate at all times of the day and night when the traffic is most heavily congested and travel a great deal more miles per day than any public or private vehicle, and by reason of the great amount of travel and congestion numerous accidents result by reason of the operation of said taxicabs, both to persons and property.

"*Ninth*—It is further stipulated that in all instances in which the present tense has been used in referring to conditions, matters and things in this stipulation, it is intended that the conditions, matters and things so referred to not only obtained at the present time, but that such conditions, matters and things also obtained and existed on Septem-

ber 22, 1921, the date referred to in the information in this case, and at the time of the filing of said information."

In addition to the briefs and arguments filed by the defendant and by the State, by leave of court John H. S. Lee, a member of the bar of this court as *amicus curiæ,* representing 300 other owners of taxicabs who operate their own cabs, has also filed briefs and arguments in this case.

In view of the stipulation in the record by the State and the defendant that the only question to be determined in the case is as to the validity of the statute which defendant was charged with violating, that will be the only question considered by this court. In fact, the defendant has argued no other question, and we do not, therefore, feel authorized to consider the questions raised by *amicus curiæ* as to the sufficiency of the facts stipulated in the record to support the judgment of conviction.

The provisions of section 42*a* are, that it shall be unlawful for any person, firm or corporation to operate any motor vehicle along or upon any public street or highway in any incorporated city, village or town in this State having a population of 100,000 or more, for the carriage of passengers for hire, indiscriminately accepting and discharging all such persons as may offer themselves for transportation, unless such person, firm or corporation shall have given, and there shall be in full force and effect and on file with the Secretary of State at all times during which such motor vehicle is being driven or operated, either (1) a bond of the owner of said motor vehicle with a solvent and responsible surety company authorized to do business under the laws of this State as surety thereon, or a bond of such owner executed by two or more personal sureties, and in such event on such bond shall attach thereto his or her statement in writing, duly sworn to and acknowledged, setting forth that he or she owns in fee simple certain described real estate, and its location and legal description, together with its actual market value, and no property shall be ac-

cepted thereon which is not located in the State of Illinois, free from all incumbrances and claims of every kind, and the total value of all property on each of said bonds shall be not less than double the amount thereof, and such bond for the full amount thereof shall by its terms be a lien for the benefit of the beneficiaries in said bond on such real estate so scheduled, and shall be recorded in the office of the recorder of deeds of each county in which such real estate is located, either of said bonds to be in the sum of $10,000 for each such motor vehicle so operated by the owner. Said bonds shall be conditioned that the owner of said motor vehicle shall pay all loss or damage that may result to any person or his personal representative or to any property from the negligent operation or defective construction of said motor vehicle, or which may arise or result from any violation of any of the provisions of the laws of the State of Illinois, and shall by its terms inure to the benefit of any and all persons and their personal representative suffering loss or damage either to person or property as herein provided, and shall provide that a suit may be brought in any court of competent jurisdiction upon said bonds by any person, firm or corporation suffering any loss or damage as herein provided. Said bonds shall further contain a provision for a continuing liability thereon notwithstanding any recovery thereon. If at any time in the judgment of the Secretary of State said bond is not sufficient for any cause, he may require the owner of such motor vehicle to replace said bond with another good and sufficient bond or insurance policy in accordance with the provisions of this act; or (2) a policy of insurance in a solvent and responsible company authorized to do business in this State, insuring the owner of said motor vehicle against loss by reason of injury, death or damage that may result to any person, or his personal representative, or to property, from the negligent operation of said motor ve-

307-7

hicle. Said policy of insurance shall be limited to the sum of $10,000 for each motor vehicle so operated, and shall provide for payment to any person suffering injury or damages, or to the personal representatives of such person, of any final judgment rendered against the owner of such motor vehicle, irrespective of the financial responsibility or the legal status of the owner of said motor vehicle. If at any time said policy of insurance be canceled by the issuing company or the authority of the issuing company to do business in this State be revoked, the Secretary of State shall require the owner who filed the same to furnish a bond or to replace the policy with another policy according to the provisions of this act. The policy of insurance shall also contain a provision that the same cannot be canceled without the giving of twenty days' notice in writing of such cancellation to the Secretary of State and filing the notice in his office. When any such policy shall be so canceled the Secretary of State shall require such owner to either furnish a bond or a new policy of insurance in accordance with the provisions of this act.

Section 42*b* provides, in substance, that every person, firm or corporation desiring to operate a motor vehicle in such city or village in manner aforesaid and for the purposes aforesaid, shall file with the Secretary of State an application for the approval of the bond or insurance policy so tendered; and if the Secretary of State shall determine that such bond or insurance policy complies with the provisions of the act, he shall accept the same and issue to such applicant a certificate setting forth the fact that the applicant has complied with the provisions of the act.

Section 42*c* provides that if any such bond or insurance policy shall for any reason become inoperative, it shall be unlawful for any such person, firm or corporation to operate such motor vehicle until a bond or insurance policy meeting the requirements of the act has been filed with the Secretary of State.

Section 42d provides penalties for violating any provision of said sections and makes any such violation a misdemeanor punishable by a fine of not less than $100 and not more than $500, or by imprisonment in the county jail not less than thirty days or more than one year, or by both such fine and imprisonment.

It is lawful, within certain bounds, to classify objects for the purpose of legislative control and adopt legislation applicable only to such objects, where the classification is based upon some substantial difference which bears a proper relation to the classification. (*Consumers Co.* v. *City of Chicago*, 298 Ill. 339.) The stipulation of facts recited in this opinion clearly shows such substantial difference exists between jitneys and motor busses on the one hand and taxicabs on the other as justifies legislation of the general character of the act in question. We are not very much impressed with the argument of the State that insured or guaranteed taxicabs will increase the safety of the public or lessen the percentage of serious accidents to individuals because of the fact that the bondsmen or insurers will have to make good the damages to the persons injured. We doubt very seriously that it has been the experience of the people of this country that there has been a less percentage of injuries to persons in mining communities or other communities where operators have voluntarily insured against personal injury liability, by reason of such insurance. It is the opinion of many well-informed persons that the very opposite result has been experienced where such insurance is obtained, and they base their judgment upon the fact that so far as the insured are concerned they act on the theory that they have shifted the liability. But if this were a vital question in this case, it is a legislative question and one with which this court is not concerned. But it always has produced more business for bonding companies and insurance companies and more business for lawyers in the way of suits for personal injuries, and incidentally it enables

the persons injured by negligent operators to collect damages by reason of such injuries. In the case of *Jitney Bus Ass'n* v. *City of Wilkes-Barre,* 256 Pa. 462, it was held that the public highways are for the use of those engaged in commerce or industrial pursuits no less than for those using cars for pleasure, but if from the usual manner of operating a certain vehicle the public is endangered, the right and duty of enacting special legislation is clear; and such regulation may very properly include the requirement of a bond to secure the payment of such damages as may be recovered for injury to persons or property occasioned by negligent operation. Many other cases recognize the same principle, and in Freund on Police Power (sec. 40) it is in substance stated that a bond to secure such damages, as a subsidiary measure of police control, appears to be permissible wherever a license may be required, but that it is not very frequently resorted to.. It is generally recognized that jail sentences and smarting punishment in the penitentiary is the character of legislation that minimizes such dangers to· the public, particularly when public acts prescribing such penalties are well enforced. It is also perfectly legitimate that reckless drivers of motor vehicles be required to respond in damages and to guarantee such response by the giving of bonds, in addition to the public acts prescribing stringent regulations and penalties for violations thereof.

The act does not violate either the State or Federal constitution in any particular because it does not include within its terms the automobile owned and driven by the owner or his chauffeur or the motor truck that carries articles of commerce or freight over the streets and highways of the city. It must be admitted that taxicabs, according to well known statistics, are much more dangerous and have caused a much greater per cent of serious accidents and injuries than the automobiles used for private convenience. In the recent case of *People* v. *Martin,* 197 N. Y. Supp. 28, decided by the Appellate Division of the Supreme Court of New

York, by stipulation proof was received that there were op-
erating in New York City about 325,000 automobiles other
than taxicabs and around 13,000 taxicabs; that during the
year 1921, according to the figures of the police department
of the city of New York, there were killed and injured by
automobiles other than taxicabs in that city 15,564 persons,
being a ratio of one to twenty-two automobiles; that ac-
cording to the same figures there were killed and injured by
taxicabs within that city in the same year 2056 persons,
being a ratio of one to six taxicabs. The reasons for this
showing are apparent. The owner of an automobile uses it
in his own affairs and rarely makes more than one trip in
any day into the city and back to his home on his business
or pleasure trip. As a rule he takes more time and uses
more caution than the taxicab driver who makes his living
thereby and rushes his machine from place to place, and, in
fact, to all places, for the purpose of taking every oppor-
tunity to secure and serve patrons. The motor trucks that
carry freight and commerce over the streets and highways
move at a much slower rate of speed than do the taxicabs,
work less hours, and generally only in daylight, and travel
on fewer streets, while taxicabs travel on all streets and
highways day and night and reach many more places. Un-
der the police power of the State it has ample authority to
make reasonable regulations of the character provided for
under the act in question. Whenever the question has been
raised it has been uniformly held that the legislature is
vested with broad discretion in making classifications for
police regulations. ."The requirement that laws shall be
general does not mean that every statute shall have effect
on every individual and in every locality in the State;" that
"a law does not cease to be general because it classifies per-
sons or places, if the basis of classification is necessary to
the purpose to be accomplished by the legislation or rea-
sonably appropriate for that purpose." (*People* v. *Kael-
ber,* 253 Ill. 552.) "The general rule is that a classification

will suffice as a basis for legislation if such classification is based on a rational difference of situation or condition found to exist in the persons or objects upon which the classification rests." *People* v. *Nellis,* 249 Ill. 12; *People* v. *Stokes,* 281 id. 159; *Mutual Loan Co.* v. *Martell,* 32 Sup. Ct. 74; *International Harvester Co.* v. *Missouri,* 34 id. 859.

Legislation of the character in the act specified and relating to taxicabs has been passed in several States of the Union. Legislation similar in character has also been put in force in many of the States relating to jitneys and motor busses. This legislation has been uniformly sustained except where special provisions have been held invalid because unreasonable. The legislation in most instances has been by city ordinance, but the legislation is universally sustained upon the common ground that it is a proper exercise of the police power of the legislative bodies, whether the power was original or delegated. *Jitney Bus Ass'n* v. *City of Wilkes-Barre, supra; Ex parte Cardinal,* 170 Cal. 519; *People* v. *Martin, supra; West* v. *City of Asbury Park,* 89 N. J. L. 462; *State* v. *Seattle Taxicab Co.* 90 Wash. 416; *City of Memphis* v. *State,* 133 Tenn. 83; *City of New Orleans* v. *LeBlanc,* 139 La. 113; *Willis* v. *City of Fort Smith,* 121 Ark. 606; *Hazelton* v. *City of Atlanta,* 144 Ga. 775; *Commonwealth* v. *Slocum,* 230 Mass. 180; *State* v. *Dillon,* (Fla.) 89 So. 558; *Houston* v. *City of DesMoines,* 176 Iowa, 455; *Ex parte Sullivan,* (Texas) 178 S. W. 537; *Ex parte Dickey,* 76 W. Va. 576.

The act is not special or local legislation, within the meaning of the constitution, because it is limited in its application to cities having a population of 100,000 or more. In Illinois there were no cities having a population of more than 100,000 people when this legislation was enacted except Chicago, but the act may apply to any city that shall hereafter have more than 100,000 population. We may take judicial notice of the fact that in cities of more than 100,000 people, like Chicago, the streets and highways are

much more congested by pedestrians and various other travelers and by traffic, and that there is much greater probability of injury to persons and property in the streets of such cities than in the streets of smaller cities. There is no objection to the legislation by reason of the fact that at present Chicago is the only city to which this legislation applies, if there is any reasonable basis for such classification. Under the stipulated facts in this case Chicago has 2,700,000 more population than any other city in Illinois. The greater the danger the greater the necessity for police regulation. It is a fact that greater danger exists in cities of greater population, and that is the very reason for basing the classification on population in this State, and it is sustainable, we think, without question. It is within the power of the legislature to classify cities on the basis of population and enact laws applicable to each class, where there is a reasonable basis for the classification in view of the objects and purposes to be accomplished by the legislation. *People* v. *De-Kalb and Great Western Railroad Co.* 256 Ill. 290; *Chicago Terminal Railroad Co.* v. *Greer,* 223 id. 104; *People* v. *Grover,* 258 id. 124; *Douglas* v. *People,* 225 id. 536.

The provisions of the statute permitting owners of taxicabs to give a bond with two responsible persons or with a solvent and responsible surety company authorized to do business in this State as surety, or to provide a policy of insurance in a responsible insurance company, were apparently inserted by the legislature to accommodate the two classes of taxicab owners whose business is to be regulated. One of such classes includes those persons who own and operate their own taxicabs, and the other class includes the corporations or individuals who operate their taxicabs by hired chauffeurs. This arrangement would be a very admirable one and as fair and reasonable as could be put in force if not marred by unreasonable provisions. It is apparent that there are a great number of taxicab owners who own their cabs and operate them as their only occupation

and means of supporting themselves and their families, and 300 of them are represented in this suit. We may assume that a considerable number of these private owners have been in the taxicab business for years and have demonstrated their ability and efficiency in handling and driving their machines over the streets and highways, and that some of them are not well able to pay the high price that might be charged for a surety bond or an insurance policy. Such a regulation as this statute provides ought not to be of a character that will drive competent and careful taxicab owners out of business, but it will only be the better if it tends to drive out of business all reckless and incompetent owners or drivers who do not operate with a proper regard for the safety of the public. The legislature has evidently recognized that there are two classes of taxicab owners and that there ought to be two classes of security recognized, so as to give all owners a reasonable chance to continue in the business and not be driven out of it. Having recognized these two classes of taxicab owners and the necessity of giving them the most favorable method of qualifying under the regulations, it was incumbent upon the legislature to make all other provisions of the statute concerning the giving of bonds and providing insurance policies reasonable, so as to give both classes fair and equal treatment under the law. Fair and equal treatment of such owners would necessarily insure the public against any illegal or unbearable monopoly of the taxicab business by either of such owners and still secure the desired results to be accomplished under the act.

It is the contention of plaintiff in error that the provisions of the act with respect to bonds and insurance policies are unreasonable and will necessarily be discriminatory and that by reason thereof they are void. We think there is much merit in this contention. As already noted, the act provides that the policy of insurance to be given as surety shall be limited to the sum of $10,000 for each taxicab operated,

and that the owner of such taxicab shall thereby be insured against any loss by reason of injury, death or damage that may result to any person, or his personal representative, or to property, from the negligent operation of the motor vehicle. The policy shall provide for payment to any person suffering such injury or damage, or to the personal representative of such person, of any judgment rendered against such owner. It expressly provides that the policy of insurance shall contain a provision that the same cannot be canceled without giving twenty days' notice thereof, in writing, to the Secretary of State. There is no provision in the statute whereby any bond given may be canceled. On the contrary, the statute provides that the bond shall be a continuing liability notwithstanding any recovery thereon. This latter provision clearly means that the surety accepted on any such bond will continue to be liable thereon although there has been one or more recoveries in which the damages recovered exceed the sum of $10,000, for which sum the bond must be given. The continuing-liability provision for bonds has been held unreasonable and invalid by other courts on the ground that no surety could properly be asked to undertake such an indefinite and unlimited responsibility. (*Jitney Bus Ass'n* v. *City of Wilkes-Barre, supra; State* v. *Dillon, supra.*) It must be conceded that the continuing-liability clause in this act renders it practically impossible for any taxicab owner to induce private persons to become voluntary sureties on such a bond, and particularly where, as in this act, there is no provision by which the surety can cancel his obligation by giving proper notice to the Secretary of State, as is permitted to the insurer in an insurance policy. It will be noticed, also, that the amount of insurance required for each taxicab operated under the provisions of the act "shall be limited to the sum of $10,000," which apparently means that the maximum amount of the policy is said sum, and that the minimum amount is not fixed, while the statute is positive that any

bond accepted as surety shall be in the sum of $10,000 for each taxicab operated. The statute also provides that personal sureties on bonds shall attach a sworn description of the real estate owned in fee and the market value thereof, and then specifically provides that no property shall be accepted thereon which is not located in the State and free from incumbrances and claims of every kind. By these provisions real estate shown to be worth $1,000,000, with a nominal incumbrance of only $1000 or less thereon, could not be accepted as a sufficient showing for one of the sureties, and two or more sureties with a similar showing would have to be rejected as insufficient or prohibited sureties on the bond. Such provisions are absolutely unreasonable, and make it utterly impossible, in our judgment, for any taxicab owner to secure the signing of a bond in a reasonable sum by two or more personal sureties, who might otherwise volunteer to do so for a taxicab owner whom they knew to be honest, reliable, careful and prudent in the operation of his machine.

It will be noticed also that the taxicab owner who gives a bond as surety is by the act not only made liable in damages for injury to persons and property by negligent operation of his machine, but is also held liable for such damages as occur by reason of the defective construction of his taxicab. He is also made liable for any loss or damage that may arise or result from the violation of any provisions of the laws of the State. Neither loss nor damage sustained by reason of the defective construction of the taxicab nor by reason of the violation of any law of Illinois is included in the clause relating to the insurance policy. The clause making the taxicab owner liable for injury by reason of the defective condition of his taxicab virtually makes him an insurer in that particular,—a character of liability that is not imposed upon any other common carrier in this State. (*Toledo, Wabash and Western Railway Co. v. Beggs,* 85 Ill. 80.) A manufacturer is not liable for injuries sustained

by one riding in an automobile by the breaking of a wheel
of the machine if the manufacturer has purchased the wheel
of a reputable manufacturer thereof.  (*Cadillac Motor Co.
v. Johnson,* 221 Fed. 801; *Ford Motor Co.* v. *Livesay,* 160
Pac. 901.)  In *Daugherty* v. *Thomas,* 45 L. R. A. (N. S.)
699, it is laid down by the Supreme Court of Michigan as
a general proposition that absolute liability, without fault on
his part, cannot ordinarily be imposed upon a citizen, because
it deprives him of property without due process of law.

The provision that one secured by a bond shall be liable
for all damages or loss sustained by reason of the violation
of any of the laws of the State is rather indefinite as to
its meaning, but the purport of the act is evidently to the
effect that the owner of a taxicab shall be liable to any per-
son who is injured by reason of the violation of any of the
laws by himself or chauffeur or agent.  It is susceptible of
the interpretation that the owner, under his bond, could be
held liable under the statute if he or his chauffeur unlaw-
fully assaulted and injured another person while driving the
machine.  No such liability, whatever it may be, is put upon
an owner providing insurance as such surety.

It is further insisted that the amount of the bond re-
quired for a taxicab is excessive, and that section 42a is for
that reason invalid.  The amount of the bond provided for
by the act covers a greater field of liability than does the
insurance policy provided for the same purpose.  We are
of the opinion that the several provisions that are made ap-
plicable to the bond and not to the insurance policy should
be held invalid, and are also of the opinion that the amount
of the bond required is excessive and must therefore be
held unreasonable.  It was intended by the legislature to
cover all character of liability that is imposed upon an
owner of a taxicab giving such a bond.  If any portion of
such liability cannot be sustained then the act on its face
shows that the bond is unreasonable.  In all the cases that
we have examined where this question has been raised, the

highest amount of any bond that has been sustained as not excessive or unreasonable is a bond in the sum of $5000 for each machine operated, and in a number of cases that we have examined such bonds are fixed at $2500 or less. The law ought not to be unnecessarily oppressive in accomplishing the purposes for which it was enacted, and a bond in the sum of $10,000 is excessive and unreasonable, and is made prohibitive in its nature not only by reason of the amount of surety required, but also by reason of being unnecessarily restrictive as to the sureties who may sign it. In the case of *Lawton* v. *Steele,* 14 Sup. Ct. 501, it is said: "To justify the State in thus interposing its authority [under the police power] in behalf of the public, it must appear, first, that the interests of the public, generally, require such interference; and second, that the means are reasonably necessary for the accomplishment of the purpose and not unduly oppressive upon individuals. The legislature may not, under the guise of protecting the public interests, arbitrarily interfere with private business or impose unreasonable and unnecessary restrictions upon lawful occupations. In other words, its determination as to what is a proper exercise of its police power is not final or conclusive but is subject to the supervision of the courts." This court has held that police regulations must be what they purport to be,—police regulations,—and must be reasonable when applied to corporations or individuals, and that what are reasonable regulations and what are subjects of police powers must necessarily be judicial questions. *Toledo, Wabash and Western Railway Co.* v. *City of Jacksonville,* 67 Ill. 37; *City of Chicago* v. *Trotter,* 136 id. 430.

It is apparent, without any argument, that section 42*a* of the statute, providing for such bonds and insurance as security, if allowed to stand as enacted, would permit discrimination between the two classes of taxicab owners,—those giving bonds and those providing insurance,—and in addition to that would make it practically impossible for any

taxicab owner to comply with the statute by the giving of a bond with two or more personal sureties. It would also tend to create a monopoly in the taxicab business because of its tendency to prohibit many efficient, honest and careful operators of taxicabs owning their own machines from further pursuing their occupation because of the fact that they may be unable to bear or pay the high rates for insurance or for surety bonds that may be required of them. For all of the reasons aforesaid we hold that the entire section 42a is void and that the judgment of conviction ought to be reversed.

The judgment of the municipal court is accordingly reversed.

*Judgment reversed.*