(No. 34822.—

Louis G. Alexander, Appellant, *vs.* The City of Chicago *et al.,* Appellees.

*Opinion filed June 20, 1958.*

MOORE, MING & LEIGHTON, of Chicago, (WILLIAM R. MING, JR., and MARK E. JONES, of counsel,) for appellant.

JOHN C. MELANIPHY, Corporation Counsel, and PHILIP A. LOZOWICK, both of Chicago, (SYDNEY R. DREBIN, EDWARD E. PLUSDRAK, and HARRY R. POSNER, of counsel,) for appellees.

Mr. CHIEF JUSTICE DAVIS delivered the opinion of the court:

This case poses the question of the constitutionality of an act of the legislature, herein referred to as the act, entitled: "An Act in relation to an exchange of certain functions, property and personnel among cities, and park districts having coextensive geographical areas and populations in excess of 500,000," (Ill. Rev. Stat. 1957, chap. 105, pars. 333.51—333.70 incl.,) together with certain companion legislation entitled: "An Act to amend Sections 3 and 6 of 'An Act to regulate the civil service of cities,' approved March 20, 1895, as amended, and to add Section 3.1 thereto," approved July 5, 1957, (Ill. Rev. Stat. 1957, chap. 24½, pars. 39-77a incl.,) ; and "An Act to amend Sections 3 and 6 of 'An Act relating to the civil service in park systems,' approved June 10, 1911, as amended, and to add Section 3b thereto," approved July 5, 1957. Ill. Rev. Stat. 1957, chap. 24½, pars. 78-113.1, incl.

Plaintiff, a taxpayer, brought suit to enjoin the city of Chicago, the Chicago Park District, and certain of their officers from disbursing funds appropriated to implement and effectuate the above enactments, and for judgment declaring such acts to be void. The defendants filed motions to strike and to dismiss which were granted by the trial court, judgment was entered for defendants, and plaintiff appealed.

The act in question provides that on January 1, 1959, its effective date, the title, control and jurisdiction of all park district boulevards, boulevard appurtenances, and park district street maintenance equipment, shall be vested in the city and the title to, control and jurisdiction of all parks, bathing beaches, bathing bath houses and playgrounds under the jurisdiction of the city shall be vested in the park district; and that the employees in charge of such facilities shall be transferred to the recipient municipality and that their respective civil service and pension rights shall be

retained and preserved. The purport and intent of the legislature is to place the jurisdiction of all streets and highways in the city in which they lie, and the jurisdiction of all parks, bathing beaches and facilities in the park district. By definition, a city within the meaning of the act is one having a population in excess of 500,000; and a park district is one having a population in excess of 500,000 and a geographic area coextensive with such city. Therefore, the act will be presently effective only in relation to the city of Chicago and the Chicago Park District.

Plaintiff urges that the act is a local or special law changing or amending the charter of the city of Chicago, and therefore violative of section 22 of article IV of the constitution of Illinois; that it is legislation affecting the municipal government of the city of Chicago within the meaning of section 34 of article IV, without providing for a prior referendum; and that the act is invalid because it amends other acts without specific reference thereto, in violation of section 13 of article IV of the constitution.

Defendants maintain that the act is not a special or local law, but rather is a general law based upon a reasonable classification by population; that it is constitutional without the requirement of a referendum since it is neither based upon section 34 of article IV, nor is it an act affecting the municipal government of the city of Chicago within the meaning of that constitutional provision; and that it is not within the proscription of section 13 of article IV, since it does not amend or repeal other acts as urged by plaintiff.

Section 22 of article IV, insofar as it is applicable here, prohibits the General Assembly from passing local or special laws where a general law can be made applicable, for the purpose of "Incorporating cities, towns or villages, or changing or amending the charter of any town, city or village." In 1904 the constitution of Illinois was amended by adding section 34 of article IV, which provides, *inter alia,* that: "The General Assembly shall have the power,

subject to the conditions and limitations hereinafter contained to pass any law (local, special or general) providing a scheme or charter of local municipal government for the territory now or hereafter embraced within the limits of the city of Chicago." The section thereafter specifies the type of legislation which may be passed with respect to the city of Chicago and provides in conclusion that: "No law *based upon this amendment* to the Constitution, affecting the municipal government of the city of Chicago, shall take effect until such law shall be consented to by a majority of the legal voters of said city voting on the question * * *." (Italics ours.) The purpose and effect of this amendment was to permit the legislature to pass any law, local, special or general, providing a scheme or charter of local municipal government for the city of Chicago without regard for the inhibitions of section 22 of article IV. *Swigart* v. *City of Chicago,* 223 Ill. 371, 374.

Thus the legislation under consideration could have been enacted pursuant to section 34 of article IV by the addition of a provision which would make it subject to referendum. But, as we stated in *People* v. *Davies Co.* 375 Ill. 397, 400-401 : "Conversely, the mere fact that an act not based upon the amendment may affect the local government of Chicago does not render submission to a referendum necessary. A law may be general and yet operate in a single place where the condition necessary to its operation exists. (*Mathews* v. *City of Chicago,* 342 Ill. 120.) The acts assailed by the appellant are general laws, and do not purport to be based upon section 34 of article IV nor to affect only the municipal government of Chicago. Manifestly, the General Assembly may enact legislation affecting the city of Chicago other than by statutes based upon section 34 of article 4." We believe that both the language and history of section 34 of article IV evince a clear purpose to permit legislation which theretofore had been prohibited, rather than to prohibit enactments which until

then had been permitted. (*People ex rel. Gutknecht* v. *City of Chicago*, 414 Ill. 600; *People* v. *Davies Co.* 375 Ill. 397.) It is likewise obvious that the legislature did not intend that section 34 of article IV should serve as the constitutional basis for the validity of the act since no referendum procedure was provided for therein. While the act before us cannot be sustained by reason of the legislative power granted by section 34 of article IV, neither is it thereby invalidated.

We therefore turn to the proscriptions of section 22 of article IV against "local or special laws." It is patent that the act presently is applicable only to the city of Chicago and the Chicago Park District, since they are the only municipal corporations having a population in excess of 500,000. However, it is well settled that the act is not special or local merely because of a legislative classification based on population. (*Littell* v. *City of Peoria*, 374 Ill. 344; *People ex rel. Moshier* v. *City of Springfield*, 370 Ill. 541,) even though such classification may render the enactment applicable in only a single place, (*Du Bois* v. *Gibbons*, 2 Ill.2d 392; *Gaca* v. *City of Chicago*, 411 Ill. 146; *People* v. *City of Chicago*, 349 Ill. 304; *Mathews* v. *City of Chicago*, 342 Ill. 120; *People* v. *Kastings*, 307 Ill. 92,) and that if unreasonable or arbitrary, a legislative classification by population is violative of section 22 of article IV. *Hunt* v. *Cook County*, 398 Ill. 412; *People ex rel. Stuckart* v. *Knopf*, 183 Ill. 410.

The judicial function in reviewing the reasonableness of a legislative classification based on population is articulately defined in *Du Bois* v. *Gibbons*, 2 Ill.2d 392, 399: "* * * a legislative classification based upon population will be sustained where founded on a rational difference of situation or condition existing in the persons or objects upon which it rests and there is a reasonable basis for the classification in view of the objects and purposes to be accomplished. [Citations.] Legislation is not special

or local merely because it may operate only in a single place where the condition necessary to its operation exists or because, at the time of its enactment, it can be applied only to one city in the State. [Citations.] There is always a presumption that the General Assembly and its committees acted conscientiously and did their duty in making a survey of the conditions prevailing in the municipalities of the State before enacting the classification legislation and the result will never be nullified by this court on the ground that its judgment might differ from that of the General Assembly. Only if it can be said that the classification is clearly unreasonable and palpably arbitrary will the courts act to hold the classifying enactment invalid. [Citation.] It must appear that there is no fair reason for the law which would not require with equal force its extension to other cities of smaller population which are not affected before we should be warranted in interfering with legislative judgment."

The effect of the present measure is to transfer to the city title, control and jurisdiction of, and responsibility for, all park district boulevards, appurtenances, and maintenance equipment. In turn, all parks, bathing beaches, bathing bath houses, and playgrounds under the jurisdiction of the city, and their equipment, will become the property and responsibility of the park district, and the affected employees will be transferred to the recipient municipality. Both the city of Chicago and the Chicago Park District have populations in excess of 3,500,000, while, according to the 1950 census, Peoria is the next largest city in Illinois with a population of 111,856. In 1952 Chicago employed 7,527 policemen, Peoria, 146. The Chicago Park District contains an area of 7,769 acres and 205 miles of boulevards compared to Peoria's 1,981 acres and 12 miles of boulevards. The Chicago Park District has 4,642 employees, of which 899 are police officers, while Peoria has 85 employees and 4 police officers.

We must presume that the legislature was familiar with the conditions existing in the various municipalities in Illinois, and that it may reasonably have ascertained that in large coextensive municipalities it was wasteful and inefficient to have a duplication of functions and services. Likewise, it may well have found that such municipalities have many employees, including specially trained personnel who could better serve the public if their special functions were unified; that public safety would be increased if the functions of a police force were integrated and under a uniform command, and streets and highways subjected to a single control. It is also apparent that such an exchange of functions between the two municipalities would involve temporary expense, some displacement of personnel, and administrative inconvenience in transition. While the benefits incident to such exchange may loom large to the municipalities to which the act applies, we cannot say that the obstacles mentioned may not be considered disproportionate to the advantages to be gained in a city like Peoria, where the park district has only 4 regular policemen and 12 miles of boulevards. Therefore we can say that there is a reasonable basis for this legislation which would not require its extension to cities and park districts having a population of less than 500,000. (*Du Bois* v. *Gibbons,* 2 Ill.2d 392, 399; *Gaca* v. *City of Chicago,* 411 Ill. 146, 149; *Hansen* v. *Raleigh,* 391 Ill. 536, 544.) In the light of the objectives sought to be attained, we hold that the present legislative classification by population is based upon a rational difference in situation or condition found to exist between the municipalities of the State.

Plaintiff also argues that the doctrine of classification does not apply to the present case, since the act changes or amends the charter of the city of Chicago contrary to the provisions of section 34 of article IV of the Illinois constitution; that this is one of the "enumerated cases" of

section 22 of article IV; and that classification is not permissible within these "enumerated cases." In support of this theory plaintiff cites certain dictum from *Hunt* v. *Cook County,* 398 Ill. 412, *People* v. *Wilcox,* 237 Ill. 421, *People ex rel. Stuckart* v. *Knopf,* 183 Ill. 410, and *People ex rel. Gleeson* v. *Meech,* 101 Ill. 200. It is sufficient to point out that the act, which provides for a transfer of property and functions between the two municipalities, neither amends the charter of the city of Chicago, as that term is used in the constitution, (*People ex rel. Lindheimer* v. *Gaylord Building Corp.* 369 Ill. 371; also see: Merriam and Elkin, "Home Rule for Chicago," 48 Northwestern L. Rev. 295, 296,) nor enlarges or diminishes the general powers of the city over parks or boulevards. The cases cited by plaintiff all involve classifications that appear to be without a rational difference of situation or condition existing in the persons or objects upon which they purported to rest and, consequently, do not aid his contention. (Cf. *Du Bois* v. *Gibbons,* 2 Ill.2d 392, 399.) This enactment is not a permissible local or special law within the purview of section 34 of article IV, but rather is a general law based upon a reasonable classification by population. As such it is immaterial whether it affects or changes certain of the functions or powers of the city. (*Du Bois* v. *Gibbons,* 2 Ill.2d 392; *Gaca* v. *City of Chicago,* 411 Ill. 146; *People* v. *City of Chicago,* 349 Ill. 304; *Mathews* v. *City of Chicago,* 342 Ill. 120; *People* v. *Kastings,* 307 Ill. 92.) It therefore follows that the act does not violate section 22 of article IV.

Peripherally, plaintiff contends that the act is unconstitutional in that it amends other acts without specific reference thereto, thereby violating section 13 of article IV of the Illinois constitution. Plaintiff specifically complains that the act amends section 21—18 of the Revised Cities and Villages Act (Ill. Rev. Stat. 1957, chap. 24, par. 21—18,) which provides that the city may acquire, maintain and

regulate parks and bathing beaches, and section 1 of the Chicago Park District Act, (Ill. Rev. Stat. 1957, chap. 105, par. 333.1,) which provides *inter alia,* that the Chicago Park District shall exercise control over and supervise all boulevards under the jurisdiction of prior park districts within the city. We conclude that the act does not amend section 21—18 of the Revised Cities and Villages Act. Its language does not prevent the city from hereafter acquiring parks and bathing beaches. Furthermore, the act is complete in itself, and is entirely intelligible without reference to prior legislation. Under such circumstances, it is well settled that an enactment does not contravene section 13 of article IV merely because it may incidentally change, modify or amend existing legislation. (*People ex rel. Coutrakon* v. *Lohr,* 9 Ill.2d 539, 549 and 550; *People ex rel. Bentson* v. *Bowen,* 9 Ill.2d 69, 74; *People ex rel. Gutknecht* v. *Chicago Regional Port Dist.* 4 Ill.2d 363, 379; *People ex rel. Lindheimer* v. *Gaylord Building Corp.* 369 Ill. 371, 377.) Consequently, the incidental effect of the act upon section 1 of the Chicago Park District Act, as well as upon section 21—18 of the Revised Cities and Villages Act, does not bring it within the prohibitions of section 13 of article IV.

We therefore conclude that the legislation in question is a general act complete in itself, based upon a reasonable legislative classification by population, and as such violates neither sections 13, 22, nor 34 of article IV of the Illinois constitution. The judgment of the trial court is accordingly affirmed.

*Judgment affirmed.*